Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Tina Wolfson (SBN 174806)
Theodore Walter Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
(310) 474-9111; Fax: 310.474.8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Jean Martin (*Pro Hac Vice*)
Ryan J. McGee (*Pro Hac Vice*)
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
(813) 559-4908; Fax: (813) 223-5402
jeanmartin@ForThePeople.com
rmcgee@ForThePeople.com

*Co-Lead Counsel for the Proposed Class*

[Additional Counsel Listed on the Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| *In Re: Ambry Genetics Data Breach Litigation* | Hon. Cormac J. Carney |
| This Documents Relates To: All Cases | Lead Case No.: 8:20-cv-00791 CJC (KESx) |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT** |
| | DATE:  April 12, 2021<br>TIME:  1:30 p.m.<br>CTRM:  9B |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

# TABLE OF CONTENTS

Pages

I.  INTRODUCTION ....................................................................1

II.  STATEMENT OF FACTS ......................................................2

III.  LEGAL STANDARDS .........................................................4

IV.  ARGUMENT .........................................................................4

    A.  Plaintiffs Properly Named KMPM as a Defendant ...........................4

        1.  Plaintiffs Meet the Pleading Standard of Fed. R. Civ. P. 8(a)...4

        2.  Plaintiffs' Due-Diligence Theory Is Sound................................6

    B.  Plaintiffs Have Article III Standing.....................................8

        1.  Plaintiffs Adequately Allege a Causal Connection ..................8

        2.  Plaintiffs Adequately Allege Redressability as to Injunctive Relief ........................................................................9

    C.  Plaintiffs' Negligence Claims Are Well Pled.....................................10

        1.  Plaintiffs Adequately Plead Causation ...................................10

        2.  Plaintiffs' Non-Economic Damages Are Not Speculative ......13

        3.  Plaintiffs May Invoke Negligence *Per Se* ...............................14

    D.  Plaintiffs State a Claim for Invasion of Privacy .................................14

    E.  Plaintiffs Allege Breach of Contract...................................................16

    F.  Plaintiffs State a Claim for Unjust Enrichment ..................................19

    G.  Plaintiffs Allege Breach of Fiduciary Duty .......................................20

    H.  Plaintiffs Allege Breach of Confidence..............................................21

    I.  Plaintiffs State a UCL Claim ..............................................................23

        1.  Plaintiffs Adequately Allege Unlawful Business Practices ....23

        2.  Plaintiffs Properly Allege Unfair and Fraudulent Violations..25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

|   | 3. | Plaintiffs Adequately Allege UCL Standing | 26 |
| J. | | Plaintiffs Allege a CMIA Claim | 27 |
|   | 1. | Plaintiffs Allege Their Private Information Was Viewed by Unauthorized Individuals | 28 |
|   | 2. | An Affirmative Act of Disclosure Is Not Necessary | 29 |
| K. | | Plaintiffs' CLRA Claim Is Well-Pled | 30 |
|   | 1. | Plaintiffs Satisfied the CLRA's Affidavit Requirement | 30 |
|   | 2. | Plaintiffs' CLRA Claims Should Not Be Dismissed Under the Pre-Filing Notice and Demand Requirements | 31 |
|   | 3. | Plaintiffs Sufficiently Plead Reliance | 32 |
| L. | | Plaintiffs Allege a CCRA Claim | 33 |
| M. | | The Illinois Plaintiffs State a Claim Under GIPA | 35 |
|   | 1. | The Illinois Plaintiffs Have Article III Standing | 35 |
|   | 2. | The Illinois Plaintiffs Allege a Violation of GIPA | 37 |
|   | 3. | Plaintiffs Properly Allege "Intentional or Reckless" Violations of GIPA | 38 |
| V. | CONCLUSION | | 38 |

1

## TABLE OF AUTHORITIES

2

<u>Pages</u>

3

**Cases**

4

*Am. Surety Co. v. Jones*, 51 N.E.2d 122 (Ill. 1943) ................................ 36

5

*Anderson v. Kimpton Hotel & Rest. Grp.*, LLC, 2019 WL 3753308
    (N.D. Cal. Aug. 8, 2019)................................................................ 8, 9

6

*Antman v. Uber Techs., Inc.*, No. 15-cv-01175-LB, 2015 WL 6123054
    (N.D. Cal. Oct. 19, 2015).............................................................. 34

7

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................ 33

8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................ 4, 38

9

*Bank of Am., N.A. v. Hensley Props., L.P.*, No 07-cv-1584 GEB,
    2008 WL 2724875 (E.D. Cal. July 11, 2008) ................................ 22

10

Barbara A. v. John G., 145 Cal. App. 3d 369 (1983) ................................ 20

11

*Barber v. Time, Inc.,* 159 S.W.2d 291 (Mo. 1942) ................................ 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 24, 33, 38

12

*Brents v. Morgan,* 299 S.W. 967 (Ky. Ct. App. 1997)................................ 15

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) ............................ 19

13

Cal. Civ. Code § 1798.82(a)........................................................ 34

14

Cal. Civ. Code § 56................................................................ 28

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*,
    62 Cal. App. 4th 1166 (1998) .................................................... 14

15

*Cason v. Baskin,* 20 So. 2d 243 (Mo. 1991).................................... 15

16

*Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242
    (N.D. Cal. Sept. 14, 2016) ...................................................... 17

17

*City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047 (C.D.
    Cal. 2014)........................................................................ 5

18

19

*Coleman v. Standard Life Ins., Co.*, 288 F. Supp. 2d 1116 (E.D. Cal
    2003) ............................................................................ 24

20

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ................................ 33

21

*Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC,
    2011 WL 1740099 (N.D. Cal. May 5, 2011) ................................ 6

22

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir. 2012) .................... 25

23

*Delman v. J. Crew Group, Inc.*, No. 16-cv-919-MWF,
    2017 WL 3048657 (C.D. Cal. May 15, 2017) ................................ 31

24

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No.
    16-cv-00014-GPC, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)......... 10, 15

25

26

*E&J Gallo Winery v. EnCana Energy Services, Inc.*,
    No. 03-cv-5412 AWI, 2004 WL 7342782 (E.D. Cal., 2004)..................... 29

27

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ................ 31

28

*Elsner v. Uveges*, 34 Cal. 4th 915 (2004)................................................ 14

- 3 -

*Entm't Research Group, Inc. v. Genesis Creative Group*, *Inc.*, 122 F.3d
    1211 (9th Cir. 1997).................................................................................21
Fairfield v. Am. Photocopy etc. Co., 138 Cal. App. 2d 82 (1955)........................15
*Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020) ..................36
*Gardner v. Health Net, Inc.*, 2010 WL 11597979
    (C.D. Cal. Aug. 12, 2010) ............................................................... 17, 23
Gilman v. Dalby, 176 Cal. App. 4th 606 (2009) ....................................................20
*Glos v. People*, 102 N.E. 763 (Ill. 1913)..............................................................36
*Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231
    (D. Colo. 2018) .............................................................................................18
*Hameed-Bolden v. Forever 21 Retail, Inc.*, No. CV 18-03019 SJO,
    2018 WL 6802818 (C.D. Cal. Oct. 1, 2018)..............................................18
*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015) ..................19
*Hill v. NCAA*, 7 Cal. 4th 1 (1994) .........................................................................15
*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) ..........................................25
*Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875
    (N.D. Cal. Dec. 19, 2019) ...........................................................................35
*Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2020 WL 7495097
    (N.D. Cal. Dec. 21, 2020) ...........................................................................11
*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197
    (N.D. Cal. 2014)......................................................................... 10, 13, 27, 34
*In re Am. Apparel, Inc. S'holder Derivative Litig.*, No. CV 10–06576
    MMM, 2012 WL 9506072 (C.D. Cal. July 31, 2012) ..................................6
*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953
    (N.D. Cal. 2016)......................................................................................23, 25
*In re Anthem, Inc. Data Breach Litigation*, No. 15-md-02617-LHK,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ......................................13, 27
*In re Capital One Consumer Data Security Breach Litigation*,
    -- F. Supp. 3d --, 2020 WL 5629790 (E.D. Va. Sept. 18, 2020)................22
*In re Experian Data Breach Litig.*, No. 15-cv-1592 AG, 2016 WL
    7973595 (C.D. Cal. Dec. 29, 2016) ...........................................................11
*In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).... 14, 15, 19,
    27
*In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940 (N.D. Ill. 2016) ..............................32
*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............15
*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp.
    3d 447 (D. Md. 2020)....................................................................................6
*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d
    1111 (C.D. Cal. 2008)..................................................................................32
*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    198 F. Supp. 3d 1183 (D. Or. 2016) ...................................... 12, 19, 27, 29

- 4 -

*In re Premera Blue Cross Customer Data Security Breach Litig.*,
    No. 15–md–2633–SI, 2017 WL 539578 (D. Ore. Feb. 9, 2017) .......... 16, 17
*In re Sagent Technology, Inc.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................. 6
*In re Sony Gaming Networks & Consumer Data Sec. Breach Litig.*, 903
    F. Supp. 2d 942 (S.D. Cal. 2012).................................................................. 15
*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996
    F. Supp. 2d 942 (S.D. Cal. 2014).................................................................. 34
*In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154
    (D. Minn. 2014) ....................................................................... 10, 13, 19
*In re Vizio, Inc., Consumer Privacy Litig.*, 2017 WL 1836366 (C.D. Cal.
    Mar. 2, 2017)................................................................................................ 16
*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-
    LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..........................passim
*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-
    LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................................... 6
*In re Zappos.com, Inc. Customer Data Security Breach Litig.*,
    888 F.3d 1020 (9th Cir. 2018) ....................................................................passim
*Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549 (2009) ............................ 14
*Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019) ................................... 21
*Karter v. Epiq Systems, Inc.*, No. 20-cv-01385-CJC (KESx) (C.D. Cal.
    Nov. 9, 2020) ................................................................................................. 7
*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)................. 31
Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963 (7th Cir. 2016)............. 13
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ...................................................... 7
*Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371 (W.D.
    Wash. Mar. 27, 2015)................................................................................... 21
*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007)................... 25
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................... 4
Maglica v. Maglica, 66 Cal. App. 4th 442 (1998) ............................................... 20
*Marin v. Eidgahy*, No. 10 CV 1906 MMA, 2011 WL 2446384
    (S.D. Cal. Jun. 17, 2011)............................................................................... 6
*Monaco v. Bear Stearns Cos.*, No. CV 09–05438 SJO, 2011 WL
    4059801 (C.D. Cal. Sept. 12, 2011).............................................................. 5
*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009) ......... 31, 32
*Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) .......................... 4
*Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA, 2015 WL 4272058
    (S.D. Cal. June 19, 2015).............................................................................. 31
*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th
    200 (2017) .................................................................................................... 18
*Pac. Rollforming, LLC v. Trakloc Intern. LLC*, No. 07cv1897-L, 2008
    WL 4183916 (S.D. Cal. Sept. 8, 2008)......................................................... 5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019)...................................36, 37

*People v. Miles*, 86 N.E.3d 1210 (Ill. Ct. App. 2017).............................................36

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)....................................20

*Poghosyan v. First Fin. Asset Mgmt.*, No. 1:19-cv-01205-DAD,
    2020 WL 433083 (E.D. Cal. Jan. 28, 2020).................................................23

*Regents of Univ. of Cal. v. Superior Cou*rt, 220 Cal. App. 4th 549 (2013) .....28, 30

*Remijas v. Neiman Marcus Grp.*, 794 F.3d 688 (7th Cir.2015) ............................12

Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257
    (2003).............................................................................................................20

Rieger v. Rich, 163 Cal. App. 2d 651 (1958).........................................................20

*Rudolph v. Hudson's Bay Co*., 18-cv-8472 PKC, 2019 WL 2023713
    (S.D.N.Y. May 7, 2019) .........................................................................19, 20

*Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E.3d 1080 (Ill. Ct. App.
    2018) ..............................................................................................................36

*Shostack v. Diller*, No. 15-cv-2255 (GBD), 2015 WL 5535808 (S.D.N.Y.
    Sept. 16, 2015) ................................................................................................5

*Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th
    1004 (2009)....................................................................................................15

*Steinley v. Health Net, Inc.*, No. CV 18-5458 PSG, 2019 WL 3059383
    (C.D. Cal. Mar. 28, 2019) ..............................................................................6

*Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664 (9th Cir. 2007)..........12

*Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014) ...................22, 28

*Tinoco v. San Diego Gas & Elec. Co.*, No. 17-cv-2433-BAS, 2018 WL
    4562479 (S.D. Cal. Sept. 21, 2018) ..............................................................14

*Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003).......................31

*Waldo v. Eli Lilly & Co.*, No. CIV. S–13–0789 LKK, 2013 WL 5554623
    (E.D. Cal. Oct. 8, 2013) ................................................................................14

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 (9th Cir.
    1977) ...............................................................................................................7

*Young v. United States Dep't of Justice*, 882 F.2d 633 (2d Cir. 1989) .................22

**Statutes**

410 ICLS 513/40 .....................................................................................................36

410 ILCS 513/15 .....................................................................................................37

410 ILCS 513/30 .....................................................................................................37

410 ILCS 513/40 ...............................................................................................35, 38

45 CFR 160.103(3)(2) .............................................................................................38

56.36 29

Cal. Bus. & Prof. Code § 17200............................................................................23

Cal. Civ. Code § 56.36 ...........................................................................................30

Cal. Civ. Code §§ 56.36, 56.101(a)........................................................27
Cal. Civ.Code § 1780(d) ....................................................................31
Cal. Health & Safety Code § 1280.15(b)(2).................................24, 26

**Rules**

Rule 8(a)............................................................................................5

**Other Authorities**

Alicia Solow-Niederman, *Beyond the Privacy Torts: Reinvigorating A
       Common Law Approach for Data Breaches*, 127 Yale L.J. Forum
       614 (2018)...............................................................................22
Cal. Civ. Prac. Bus. Litig. § 68.28 (Oct. 2020) ....................................22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

## I.   INTRODUCTION

Plaintiffs seek to hold Defendants Ambry Genetics Corporation ("Ambry") and Konica Minolta Precision Medicine, Inc. ("KMPM") accountable for their inadequate data security, which resulted in a nationwide data breach injuring approximately 233,000 patients—adults and children of a potentially vulnerable population who used Defendants' genetic testing services to determine whether they have or are susceptible to disease (the "Breach"). Breaching their duties under numerous federal and state laws, Defendants failed to implement reasonable and adequate security measures to prevent, detect, and address such a breach. This resulted in the unauthorized disclosure of Plaintiffs' and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"). Defendants now attempt to avoid liability for the Breach by disavowing their privacy policy and arguing, in shotgun fashion, that Plaintiffs lack Article III standing and fail to state any claims under California or Illinois law, while suggesting Defendants' parent company, Konica Minolta, Inc. ("Konica"), should have been named instead of KMPM.

First, Defendants' attempt to dismiss KMPM should be denied. Plaintiffs adequately plead KMPM had knowledge of Ambry's inadequate data security as a result of the due diligence performed by Konica prior to its acquisition of Ambry and that, despite KMPM exercising direct control over Ambry, Defendants failed to take reasonable measures to ensure their systems were secure. These allegations exceed the parent-subsidiary theory on which Defendants rely, and it is telling that Defendants failed to cite a single case in support of their position that Plaintiffs' due-diligence theory lacks merit.

Second, Defendants' standing challenges should be denied. Each Plaintiff sufficiently alleges actual injuries that are a direct result of Defendants' conduct. Through the Breach, Defendants disclosed Plaintiffs' Private Information to unauthorized parties who subsequently viewed and misused that information.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Plaintiffs also sufficiently allege redressability as to their injunctive relief claim, because Plaintiffs' Private Information remains in the possession of Defendants and susceptible to future breaches.

Finally, Defendants' challenges to the sufficiency of Plaintiffs' claims should be rejected. Plaintiffs adequately allege causation in that the facts indicate both a logical and temporal relationship between the Breach and the identity theft, fraud, and other injuries Plaintiffs suffered. Defendants' other challenges are based on entirely inapposite cases or rely on cherry-picked allegations in Plaintiffs' Complaint while Defendants ignore more pertinent allegations.

## II.   STATEMENT OF FACTS

Ambry offers a comprehensive genetic testing menu of more than 300 tests used for screening and diagnosis of inherited and non-inherited diseases. (First Amended Consolidated Class Action Complaint, Dkt. No. 57 ("FAC"), ¶ 1.) Ambry maintains patients' Private Information on its computer network in a condition vulnerable to cyberattacks, including through infiltration of certain Ambry employee email accounts. (FAC ¶ 4.) Following Konica's 2017 acquisition of Ambry for $1 billion, KMPM was formed in 2018 as a subsidiary, with Ambry and Invicro LLC as second-tier subsidiaries. (FAC ¶ 35.) Plaintiffs allege KMPM exercises direct control over, profits from, and takes an active role in the development, management, and marketing of Ambry's genetic testing services. (FAC ¶ 40.) Plaintiffs also allege that, prior to Ambry's acquisition, Konica and Ambry would have performed due diligence, including a full and complete cyber-security assessment, which would have been shared with KMPM, requiring KMPM and Ambry to take reasonable and adequate measures to ensure Ambry's data systems were protected against unauthorized intrusions. (FAC ¶¶ 36-38, 41.)

On January 22, 2020, unauthorized parties accessed an Ambry employee's email account, allowing them to access and acquire Plaintiffs' and Class Members' Private Information for several days. (FAC ¶¶ 2, 49.) Although it is unclear when

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Ambry first discovered the intrusion, Ambry's investigation revealed that the approximately 233,000 patients' Private Information was disclosed to unauthorized parties, who subsequently used that information to engage in identity theft and fraud. (FAC ¶¶ 50-51, 322.) The compromised Private Information included patient names, dates of birth, health insurance information, medical information, and, for some patients, Social Security Numbers, diagnosis information, and other confidential personal or medical information. (*See, e.g.*, FAC ¶¶ 2, 10-33, 50.)

Despite the heightened risks of identity theft and fraud these patients faced, Defendants delayed notifying them of the Breach until approximately April 15, 2020. (FAC ¶¶ 2, 6, 284-286.) Plaintiffs allege that, as a result of the Breach, Defendants disclosed their Private Information. (FAC ¶¶ 2, 6, 49-50, 57.) All Class Members already have suffered misuse of their Private Information, have to spend spend significant time and/or money to protect themselves from the adverse ramifications of the Breach, and will forever be at a heightened risk of identity theft and fraud. (FAC ¶¶ 6, 280.)

Many Plaintiffs allege they experienced actual or attempted fraud and identity theft following the Breach, and all experienced a substantial increase in suspicious phishing telephone calls and emails.[1] Plaintiffs and Class Members also overpaid for Ambry's services, and the value of their Private Information diminished as a result of the Breach. (FAC ¶¶ 268-269, 329, 365, 377, 405.)

Defendants exacerbated these risks by waiting nearly three months to notify patients that their Private Information had been disclosed to unauthorized parties. (FAC ¶¶ 3, 28-286.) The notice itself was inadequate, and many of the details concerning the Breach remain unknown. (FAC ¶¶ 5, 7, 56, 417.) The notice failed to provide any meaningful information as to what actions Defendants undertook to

---

[1] *See, e.g.*, FAC ¶¶ 60 (actual fraud), 73, 84, 90, 96, 102-03 (actual fraud), 109, 125, 130, 138 (actual fraud), 144 (actual fraud), 160 (actual fraud), 162-63 (actual fraud), 182 (actual fraud), 190-91 (actual fraud), 201 (actual fraud).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

mitigate the damage caused by the Breach, and provided no details with respect to any improvements made to Defendants' data security systems to prevent similar incidents from occurring again. (FAC ¶ 9, 479-483.)

Defendants have obligations under federal law (including the Health Insurance Portability and Accountability Act ("HIPAA")), California law (including the Confidentiality of Medical Information Act ("CMIA")), Illinois law (including the Illinois Genetic Information Privacy Act ("IGIPA")), industry standards, and common law to keep patients' Private Information confidential and protected against unauthorized disclosure. (FAC ¶¶ 1, 8, 244-258, 369.) Defendants violated these obligations by failing to take adequate security precautions to protect patients' Private Information. (FAC ¶¶ 263, 323-326, 362, 376, 392.)

## III.   **LEGAL STANDARDS**

Article III standing exists if (1) the plaintiff suffered an injury in fact (*i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"); (2) the injury is "'fairly traceable' to the challenged conduct"; and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, general allegations of injury may suffice. *Id.*

In deciding a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and view them in the light most favorable to plaintiff. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). Courts draw all reasonable inferences in favor of plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009).

## IV.   **ARGUMENT**

### A.   **Plaintiffs Properly Named KMPM as a Defendant**

#### 1.   **Plaintiffs Meet the Pleading Standard of Fed. R. Civ. P. 8(a)**

Defendants argue KMPM is improperly named because a corporate family relationship is insufficient to hold one entity liable for another's conduct. However,

Plaintiffs allege that KMPM had direct control over Ambry's data security and had knowledge of its inadequacies, yet did nothing to address known deficiencies that allowed the Breach to occur. (*See* FAC ¶¶ 40 ("KMPM exercises direct control over Ambry"), 41 ("KMPM . . . failed to take adequate and reasonable measures to ensure Ambry's data systems were protected against unauthorized intrusions.")). These allegations, which Defendants ignore, support an independent theory of liability against KMPM as a result of its own conduct.[2] *See Shostack v. Diller*, No. 15-cv-2255 (GBD), 2015 WL 5535808, at *6 (S.D.N.Y. Sept. 16, 2015) ("Absent direct involvement in the allegedly illegal acts, a parent corporation can be held liable for a subsidiary's actions.").

Even taking Defendants' characterization as true, "[p]arent companies may be liable for their own unlawful acts, the unlawful acts of subsidiary companies that act as their agents, and the unlawful acts of their predecessors." *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). Plaintiffs' allegations are sufficient to put KMPM on notice of its potential liability for the Breach, "which is all that is required under the liberal pleading standards of Rule 8(a)." *Id.*; *see also Monaco v. Bear Stearns Cos.*, No. CV 09–05438 SJO, 2011 WL 4059801, at *19 (C.D. Cal. Sept. 12, 2011) (holding Rule 8(a) applies to allegations concerning successor liability); *Pac. Rollforming, LLC v. Trakloc Intern. LLC*, No. 07cv1897-L, 2008 WL 4183916, at *3 (S.D. Cal. Sept. 8, 2008) (same).

Defendants' argument that Plaintiffs must independently identify each Defendant's conduct and may not refer to Ambry and KMPM collectively ignores many allegations in the Complaint where Plaintiffs identify the individual roles of

---

[2] Defendants' reliance on *United States v. Bestfoods*, 524 U.S. 51 (1998) and *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) is misplaced. Those cases concern whether liability may be imposed on corporate parents for their subsidiaries' conduct, or on corporate shareholders for the corporation's conduct. But, as explained, Plaintiffs' primary theory against KMPM is that it should be liable for its own conduct that resulted in the Data Breach.

- 5 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

each Defendant. (*E.g.*, FAC ¶¶ 3-4, 34-41, 208-215, 229-232). These allegations "are sufficient to render it plausible that all Defendants are jointly liable for at least some of the alleged wrongful acts, even if Plaintiffs cannot identify precisely which Defendant did what without an opportunity to conduct discovery." *Steinley v. Health Net, Inc.*, No. CV 18-5458 PSG, 2019 WL 3059383, at *4 (C.D. Cal. Mar. 28, 2019); *see also In re Am. Apparel, Inc. S'holder Derivative Litig.*, No. CV 10–06576 MMM, 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012) ("The federal court cases defendants cite . . . do not collectively hold that group pleading is *per se* impermissible, so long as group pleading is limited to defendants who are similarly situated."). Plaintiffs' use of "Defendants" is a far cry from Defendants' cases where "defendants" referred to more than ten defendants or the allegations made no attempt to differentiate between any of the defendants.[3]

### 2. Plaintiffs' Due-Diligence Theory Is Sound

Without any legal support,[4] Defendants call Plaintiffs' due-diligence theory against KMPM "untenable" and "impossible." Amended Notice of Defendants' Motion and Motion to Dismiss Plaintiffs' First Amended Complaint, Dkt. No. 65 ("Mot.") at 6-7. However, there is nothing absurd about holding a company responsible for ignoring obvious security deficiencies and failing to implement

---

[3] *See, e.g.*, *Marin v. Eidgahy*, No. 10 CV 1906 MMA, 2011 WL 2446384, *4 (S.D. Cal. Jun. 17, 2011) (eleven defendants named); *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, *3 (N.D. Cal. May 5, 2011) (fifty Doe defendants named); *In re Sagent Technology, Inc.*, 278 F. Supp. 2d 1079, 1082 (N.D. Cal. 2003) (thirteen defendants named).

[4] By contrast, at least one other court acknowledged Plaintiffs' due-diligence theory. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020) (holding lack of cybersecurity due diligence, among other allegations, "met the particularity requirements of Rule 9(b)"); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020) ("[I]n an SEC filing . . . , Yahoo represented that Yahoo knew of no incidents of unauthorized access of personal data that might adversely affect the Verizon acquisition . . . . However, thirteen days later . . . Yahoo publicly disclosed the 2014 data breach.").

improvements when that company had direct control. This is precisely what Plaintiffs allege: 1) Konica performed due diligence prior to its acquisition of Ambry, which would include a full and complete cyber-security assessment, the results of which were shared with KMPM (FAC ¶¶ 36-38); and 2) KMPM, as the entity that exercises direct control over Ambry, failed to take adequate and reasonable measures to prevent the Breach from occurring, despite having knowledge of the inadequate data security from that due diligence. (FAC ¶¶ 40-41).

To the extent Defendants suggest Plaintiffs named the wrong entity, and should have named Konica instead of KMPM, Plaintiffs request that the Court grant limited jurisdictional discovery regarding this assertion, so Plaintiffs can determine whether amendment is appropriate and, if necessary, amend. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.4, 431 n.24 (9th Cir. 1977) (noting court's discretion to allow limited discovery regarding subject matter jurisdiction); *Karter v. Epiq Systems, Inc.*, No. 20-cv-01385-CJC (KESx), Dkt. No. 43, slip op. at 3-4 (C.D. Cal. Nov. 9, 2020) (granting request for jurisdictional discovery regarding Plaintiff's standing).

If the Court determines that KMPM should be dismissed, then Plaintiffs request an opportunity to amend to allege additional facts supporting Plaintiffs' theory of liability against KMPM. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured."). Even without jurisdictional discovery, Plaintiffs could allege that: Ambry and KMPM share an office in Aliso Viejo; Konica reported to its investors in its 2019 Integrated Report that KMPM oversees Ambry[5]; and KMPM presently operates without employees but its management

---

[5] *See* Konica Minolta, Inc., Integrated Report 2019, at 26, https://www.konicaminolta.com/shared/changeable/investors/include/ir_library/ar/ar2019/pdf/konica_minolta_ar2019_e.pdf (last accessed February 8, 2021).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

controls the day-to-day operations of Ambry with the ultimate intention of transferring all Ambry employees and assets to KMPM.[6]

### B.   Plaintiffs Have Article III Standing[7]

#### 1.   Plaintiffs Adequately Allege a Causal Connection

Relying almost exclusively on *Anderson v. Kimpton Hotel & Rest. Grp.*, LLC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019), Defendants argue that Plaintiffs have not sufficiently alleged causation. However, all Plaintiffs allege that, as a result of Defendants' failure to implement and follow reasonable security procedures, Defendants disclosed their patients' Private Information to identity thieves who, in turn, viewed and misused that information causing: 1) Plaintiffs to spend significant amounts of time and/or money in an effort to protect themselves from the adverse ramifications of the breach; 2) a heightened risk of identity theft and fraud; and 3) identity theft and fraud that some Plaintiffs already experienced. (*E.g.*, FAC ¶¶ 5-6, 263-264, 273-274.) These allegations are sufficient to meet Article III's causation requirement, as courts have held in other data breach cases. *See In re Zappos.com, Inc. Customer Data Security Breach Litig.*, 888 F.3d 1020, 1029 (9th Cir. 2018) ("Plaintiffs sufficiently allege that the risk of future harm they face is '"fairly traceable" to the conduct being challenged'—here, Zappos's failure to prevent the breach."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2017 WL 3727318, at *17 (N.D. Cal. Aug. 30, 2017) ("Plaintiffs thus allege

---

[6]   *See* Konica Minolta, Inc., Integrated Report 2017, at 34, https://www.konicaminolta.com/about/investors/pdf/ar/konicaminolta/ar2017/konica_minolta_ar2017_e.pdf (last accessed February 8, 2021) ("By combining . . . technologies unique to Konica Minolta with genetic diagnostic technologies developed by [Ambry], we are within shooting distance of establishing a global leading company.").

[7] Defendants do not assert a standing challenge against any Plaintiff on the basis of failure to allege an actual injury in fact and their argument regarding redressability is limited to Plaintiffs' injunctive relief claim. Plaintiffs only address the standing issues raised by Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

a plausible "causal chain" of events that links the Data Breaches, which Plaintiffs allege resulted from Yahoo's failures to maintain appropriate data security measures, with the specific harms alleged by Plaintiffs.").

*Anderson* is inapposite. That court dismissed one of the plaintiff's claims with leave to amend because "the complaint [did] not allege the nature of any assertedly reasonable, appropriate, obligatory, sufficient and/or adequate action [the defendant] failed to take." *Anderson*, 2019 WL 3753308, at *4.[8] Here, Plaintiffs allege specific actions and omissions by Defendants that resulted in the Breach, including for instance that the Breach could have been prevented by following the "How to Prevent Phishing" guidelines described in the Complaint. (FAC ¶¶ 226-227; *see also* FAC ¶¶ 5-6, 247, 392 258, 401, 483.) Plaintiffs will learn through discovery the precise mechanism that caused the breach (which is the only way they can learn these details given Defendants' notices to Plaintiffs were completely devoid of such facts), but Plaintiffs have alleged more than conclusory allegations that Defendants' conduct resulted in the Breach and subsequent harms to Plaintiffs.[9]

### 2. Plaintiffs Adequately Allege Redressability as to Injunctive Relief

Defendants ignore numerous allegations by Plaintiffs addressing redressability. Specifically, Plaintiffs allege: 1) Defendants still possess Plaintiffs' Private Information (FAC ¶ 478); 2) Defendants have announced few, if any, changes to their data security infrastructure that allowed the Breach to occur and which would prevent future breaches (FAC ¶ 479); 3) Defendants' insufficient data

---

[8] The *Anderson* court also dismissed the claims of two other plaintiffs for lack of standing because the defendant produced uncontroverted evidence that those two plaintiffs' information was not involved in the data breach. *Anderson*, 2019 WL 3753308, at *2. Defendants have not made a similar showing concerning Plaintiffs in this case.

[9] *See, e.g.*, FAC ¶¶ 60, 62, 67, 72, 78, 83, 89, 95, 101-102, 108, 114, 119, 124, 129, 132, 138, 143-144, 149, 154-155, 160, 162, 163, 165, 170, 175-176, 181-183, 189-190, 196, 201, 205.

- 9 -

security is now known to hackers, making Plaintiffs' Private Information even more vulnerable to future attacks (FAC ¶ 480); 4) there is no reason to believe Defendants' security measures are any more adequate now than they were before the Breach (FAC ¶ 482); and 5) Plaintiffs seek specific measures that would improve Defendants' data security and prevent future breaches (FAC ¶¶ 9, 483).

Plaintiff in *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-cv-00014-GPC, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016), arguably "fail[ed] to establish 'redressability' as to the request for injunctive relief because Plaintiff [did] not sufficiently allege that he is 'realistically threatened by a repetition of his experience' that is 'likely to be redressed by a favorable decision' by this Court." Here, Plaintiffs adequately allege that, "[u]nless a Class-wide injunction is issued, Plaintiffs and Class Members remain at risk that Defendants will continue to fail to properly secure the Private Information of Plaintiffs and Class Members resulting in another data breach." (FAC ¶ 309.) Plaintiffs are not seeking injunctive relief for "psychic satisfaction," as *Dugas* held is improper; rather, Plaintiffs seek injunctive relief, including adequate credit monitoring services, to prevent actual future injury. (FAC ¶¶ 9, 277, 279, 300, 311.) Other courts, including the Ninth Circuit, hold such allegations sufficient at this early stage. *See, e.g.*, *Zappos.com*, 888 F.3d at 1030.[10]

### C.    Plaintiffs' Negligence Claims Are Well Pled

#### 1.    Plaintiffs Adequately Plead Causation

Defendants ignore allegations of actual fraud experienced by Plaintiffs following the Breach (FAC ¶¶ 60, 102-03, 138, 144, 160, 162-63, 182, 190-91, 201). And Defendants do not dispute Plaintiffs' allegations that they experienced a

---

[10] *See also, e.g.*, *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1220 (N.D. Cal. 2014) ("Plaintiffs have adequately pleaded that they have Article III standing to bring a claim for declaratory relief."); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1161 (D. Minn. 2014) ("Plaintiffs have plausibly pled that their injuries will be redressed by the injunctive relief they seek, and at this stage, that is all that is required.").

- 10 -

dramatic increase in phishing emails and phone calls following the breach. (FAC ¶¶ 73, 84, 90, 96, 109, 125, 130). Instead, Defendants argue Plaintiffs cannot establish a causal connection between their injuries and the Breach "without pleading facts regarding actual improper use and that those Plaintiffs previously have not suffered identity theft." But Defendants' additional element—that Plaintiffs must allege that they have not *previously* suffered identity theft—has been rejected by courts confronted with similar arguments. *See In re Experian Data Breach Litig.*, No. 15-cv-1592 AG, 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016) ("This argument isn't supported by any case law that requires such specific allegations of causation at a 12(b)(6) stage and is unconvincing.").

Whether Plaintiffs suffered prior identity theft or misuse of their Private Information is irrelevant to the direct and proximate harm suffered by Plaintiffs as a result of this Breach. Even if Plaintiffs had their identities stolen in the past, it does not mean their Personal Information *was not stolen* in this Breach, or that they need not take action to protect themselves now because of it. *See e.g.*, *Zappos.com*, 888 F.3d at 1029 (rejecting argument "[t]hat hackers might have stolen Plaintiffs' PII in unrelated breaches, and that Plaintiffs might suffer identity theft or fraud caused by the data stolen in those other breaches (rather than the data stolen from Zappos)").[11]

---

[11] *See also, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1205 (D. Or. 2016) ("It is enough at this stage of the litigation that Neiman Marcus admitted that 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk. Those admissions and actions by the store adequately raise the plaintiffs' right to relief above the speculative level."); *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2020 WL 7495097, at *11 (N.D. Cal. Dec. 21, 2020) (rejecting argument "that Plaintiff cannot prove causation because she has been the victim of numerous other data breaches in which her compromised information could have been used to commit fraud . . . . [T]he mere fact that Plaintiff has been a victim of other more serious breaches in the past does not mean a substantial connection between this breach and her decision to monitor her credit more closely is lacking . . . Defendant does not get a free pass on this basis.") (citations omitted).

- 11 -

To establish causation between the Breach and injury, it is enough to allege: "(1) a temporal element (*i.e.*, that plaintiffs 'incurred [an injury after providing their information to Defendants]); (2) that [Defendants] notified them that their data had been compromised; and (3) that [Defendants] offered them "one year of free credit monitoring and identity-theft protection."'" *Premera*, 198 F. Supp. 3d at 1205 (quoting *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 690–91 (7th Cir.2015)); *see also Yahoo!*, 2017 WL 3727318, at *18-19 (causation established through allegations "that (1) Defendants' data security practices were insufficient; (2) hackers accordingly breached Defendants' servers . . . ; and (3) hackers accordingly gained access to Plaintiffs' . . . PII").

Plaintiffs' allegations of actual fraud and increased phishing attempts following the Breach, along with the allegations that the Private Information compromised was of a nature that could be used for such wrongdoing (FAC ¶ 2), alone, meet Plaintiffs' burden as to causation at the pleading stage. Furthermore, as explained above with regard to Plaintiffs' standing, Plaintiffs' damages in the form of time and money spent to protect themselves from the threat of identity theft and fraud are cognizable, and directly caused by Defendants' negligence. None of Defendants' cases address such issues, and all of those cases predate *Zappos* and similar controlling authority that should guide the Court here.[12]

Defendants also argue that Plaintiffs have not alleged a causal connection between Defendants' delay in notifying Plaintiffs of the Breach and Plaintiffs' injuries. Not true. Plaintiffs allege Defendants waited almost three months to notify them of the breach, and almost a month after Defendants notified the Department of

---

[12] Defendants quote *Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664, 668 (9th Cir. 2007), for the proposition that "purely temporal connections are often insufficient to establish causation," but fail to address the next line of that opinion, which explains that "proximate cause is supported not only by the temporal, but also by the logical, relationship between the two events." Such reasoning supports Plaintiffs' claims here.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Health and Human Services. (FAC ¶¶ 3, 50, 52, n.4.) This unreasonable delay prevented Plaintiffs from taking steps to protect their Private Information from being used for identity theft and fraud. (FAC ¶¶ 457, 461, 462.)[13]

### 2. Plaintiffs' Non-Economic Damages Are Not Speculative

Defendants argue that Plaintiffs' non-economic losses such as "increased risk of identity theft and time and effort to monitor accounts" are too speculative to support a negligence claim. However, Plaintiffs' theories of damages are cognizable in the evolving context of data breach litigation. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2016 WL 3029783, at *12-16 (N.D. Cal. May 27, 2016) ("[A] growing number of courts that have recognized that damages associated with time spent monitoring one's PII are recoverable.").[14]

Here, Plaintiffs allege economic damages (*e.g.*, out-of-pocket expenses relating to efforts to mitigate fraud and further injury), *as well as* non-economic damages including (a) paying monies to Ambry for its goods and services which they would not have paid had Ambry disclosed its inadequate data security practices; (b) damages to and diminution in the value of their Private Information—a form of intangible property that Plaintiffs entrusted to Ambry as a condition for healthcare services; (c) loss of privacy; and (d) imminent and impending injury arising from the increased risk of fraud and identity theft. (FAC ¶¶ 62, 67, 72, 78,

---

[13] Plaintiffs O'Hara, Terrano, and Volk specifically allege that they suffered fraud in February and March 2020—when Defendants knew about the Data Breach but had yet to issue any notification. (FAC ¶¶ 160, 191, 201.) And, all Plaintiffs could have taken action sooner to protect themselves had they known about the Data Breach at that time.

[14] *See also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (holding "time and effort" plaintiff spent "monitoring both his card statements and his other financial information" was "sufficient" for standing); *Adobe*, 66 F. Supp. 3d at 1224 ("the risk that [p]laintiffs' personal data will be misused by the hackers who breached [defendant's] network is immediate and very real."); *Target*, 66 F. Supp. 3d at 1166 (accepting damages theory that plaintiffs "would not have shopped" had they known about the Target's data security issues).

- 13 -

83, 89, 95, 101, 108, 114, 119, 124, 132, 137, 143, 149, 154, 165, 170, 175, 181, 189, 196, 205, 329.) Plaintiffs' alleged damages are cognizable in data breach cases and sufficient to survive a motion to dismiss.

### 3.   Plaintiffs May Invoke Negligence *Per Se*

Defendants argue a negligence *per se* claim cannot be triggered by Defendants' violation of HIPAA or the FTC Act because these statutes do not create a private right of action. Although the doctrine of negligence *per se* does not provide a private right of action for violation of a statute, under the doctrine a "plaintiff 'borrows' statutes to prove duty of care and standard of care." *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 555–556, 558 (2009); *see also Waldo v. Eli Lilly & Co.*, No. CIV. S–13–0789 LKK, 2013 WL 5554623, at *8 (E.D. Cal. Oct. 8, 2013) (invoking statutory duty does not create cause of action).

Plaintiffs are not "attempting to pursue a private cause of action for violation of the statute; rather, [Plaintiffs are] pursuing a negligence action and . . . relying upon the violation of a statute . . . to establish part of that cause of action." *Tinoco v. San Diego Gas & Elec. Co.*, No. 17-cv-2433-BAS, 2018 WL 4562479, at *1 (S.D. Cal. Sept. 21, 2018). Because Plaintiffs allege an independent duty of care (FAC ¶¶ 331-341), the violation of HIPAA and/or the FTC Act may serve as *per se* evidence that Defendants failed to exercise due care. *See Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1172 (1998); *Elsner v. Uveges*, 34 Cal. 4th 915, 923 (2004) ("[S]tatutes may be admitted to establish a standard or duty of care in negligence actions.").

### D.   Plaintiffs State a Claim for Invasion of Privacy

Plaintiffs assert invasion of privacy under both the California Constitution and common law. (FAC ¶¶ 343-44). In an opinion ignored by Defendants, the Ninth Circuit recently identified the elements Plaintiffs must plead: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). These

- 14 -

elements are "mixed questions of law and fact." *Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994). Defendants failed to address these elements, nor could they because they cannot plausibly argue that Plaintiffs lack a reasonable expectation in their Private Information, or that the alleged invasion of privacy would not be "highly offensive" to a reasonable person. *Facebook*, 956 F.3d at 601.

Defendants also argue that Plaintiffs must allege a "heightened assertion of knowing and intentional misconduct" to make a claim for invasion of privacy. However, the level of scienter referenced in *In re Sony Gaming Networks & Consumer Data Sec. Breach Litig.* ("*Sony I*") applied to a claim under California's Consumer Records Act, Cal. Civ. Code §§ 1798 *et seq.* ("CCRA"), not to an invasion of privacy claim. *Sony I*, 903 F. Supp. 2d 942, 973 (S.D. Cal. 2012). *Sony I* did not even address a claim for invasion of privacy. Defendants' attempt to create a "heightened intent" requirement lacks any support. California law "makes no distinction" between intentional and negligent invasions of privacy. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1043 (2009).[15] "The motives of a person charged with invading the [privacy] right are not material with respect to the determination whether there is a right of action, and malice is not an essential element of a violation of the right." *Fairfield v. Am. Photocopy etc. Co.*, 138 Cal. App. 2d 82, 87 (1955).[16]

---

[15] Defendants' reliance on *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), is misplaced because this case concerned claims under the California Constitution, not common law. Defendants also cite *Dugas*, 2016 WL 6523428, at *12, but that court simply followed *in re iPhone* and, again, did not analyze the claim under the test enunciated in *Facebook*. These cases predate *Facebook*, where the Ninth Circuit framed the elements differently and specifically refused to follow *In re iPhone. See Facebook*, 956 F.3d at 606 & n.8.

[16] *See also Barber v. Time, Inc.,* 159 S.W.2d 291, 294 (Mo. 1942); *Cason v. Baskin,* 20 So. 2d 243 (Mo. 1991); *Brents v. Morgan,* 299 S.W. 967, 970 (Ky. Ct. App. 1997).

In any event, Plaintiffs *have* alleged Defendants' invasion of privacy was intentional. Plaintiffs allege: 1) Defendants knew their information security practices were inadequate and had numerous security vulnerabilities (FAC ¶¶ 351, 404, 228); 2) KMPM intentionally failed to take adequate and reasonable measures to ensure Ambry's data systems were protected against unauthorized intrusions, even though it knew or should have known as a result of due diligence prior to the acquisition of Ambry (FAC ¶ 41); 3) Defendants knew their inadequate data security measures would likely result in a breach like the Breach; (FAC ¶ 351); and 4) Defendants knew that such a breach would harm Plaintiffs through release of their highly sensitive, immutable Private Information (FAC ¶ 352).[17]

E.    **Plaintiffs Allege Breach of Contract**

All Plaintiffs allege that they handed over their immutable genetic information and other Private Information to Ambry on the understanding that the privacy of such sensitive data would be kept confidential. (FAC ¶¶ 58, 64, 69, 75, 80, 86, 92, 98, 105, 111, 116, 121, 127, 134, 140, 146, 152, 159, 167, 172, 178, 186, 193, 200). In its Privacy Policy and other privacy statements, Ambry agreed to maintain Plaintiffs' privacy in accordance with HIPAA and otherwise. (FAC ¶¶ 208-15). Thus, a contract existed, Ambry breached that contract by failing to provide adequate security, and Ambry cannot now disavow its own Privacy Policy. *See In re Premera Blue Cross Customer Data Security Breach Litig.*, No. 15–md–2633–SI, 2017 WL 539578, *6, 11 (D. Ore. Feb. 9, 2017) (denying motion to dismiss contract claims based on privacy notice in data breach case).

Defendants argue there was no independent contractual agreement between Plaintiffs and either Defendant where Defendants "assumed obligations" regarding

---

[17] Courts allow invasion of privacy claims when the alleged invasion is much less serious. *See, e.g.*, *In re Vizio, Inc., Consumer Privacy Litig.*, No. 16-ml-2693-JLS, 2017 WL 1836366, at *5 (C.D. Cal. Mar. 2, 2017) [allowing invasion of privacy claims where television company collected consumers' viewing habits and shared them with advertisers to provide targeted advertisements]).

data security or data breach notification. This argument ignores allegations that Ambry notified Plaintiffs of its "legal duties and privacy practices" in its Notice of Privacy Practices (FAC ¶ 212), and promised it would "not use or disclose [Plaintiffs'] PHI" without "written authorization." (FAC ¶ 212). Defendants also argue there was no "meeting of the minds," but the terms of the express contract were *written and proffered by Defendants* in their Privacy Policy and other privacy statements. (FAC ¶¶ 209, 210, 211, 212, 213, 359, 362). Ambry's Privacy Policy expressly stated that, by using its website or transmitting information to Ambry, Plaintiffs agreed to the terms of the agreement. (FAC ¶ 211). Defendants should not be allowed to disavow their commitments. *See Premera*, 2017 WL 539578 at *6, 11.[18]

Furthermore, "[t]he existence of an implied contract is an issue of fact" inappropriate for determination on a motion to dismiss. *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016). In addition to the "statutory obligations" with which Defendants admit they promised to comply (*e.g.*, HIPAA), Plaintiffs also allege they entrusted Defendants with their Private Information, and that Defendants failed to safeguard it. (FAC ¶¶ 367-377). "When a person hands over sensitive information . . . , they presumably expect to receive an implicit assurance that the information will be protected." *Castillo*, 2016 WL 9280242, at *9. Plaintiffs' allegations are sufficient.

Defendants argue Plaintiffs have not alleged they read the Privacy Policy and other privacy statements on Ambry's website prior to purchasing services from Defendants. However, Plaintiffs alleged they "reviewed and/or relied on statements made by or provided by Ambry and/or otherwise understood that Ambry would

---

[18] Defendants' reliance on *Gardner v. Health Net, Inc*., 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) is misplaced. Unlike Plaintiffs, the plaintiffs in that case failed to allege any actual damages or explain how the defendant violated its privacy policy. *Cf. id.* at *6-7, with FAC ¶¶ 210-15.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

protect its patients' Private Information if that information were provided to Ambry." (FAC ¶ 363.) And Plaintiffs specifically allege they reviewed, read or understood the privacy information prior to purchase of goods or services from Ambry. (FAC ¶¶ 159, 186, 193, 200.) Fundamentally, Defendants fail to establish that Plaintiffs must have read any of this material in order to state a breach of contract claim. *See, e.g.*, *Yahoo! Inc.*, 2017 WL 3727318, at *44, 47.[19]

Contrary to Defendants' assertion, allowing a single email account to be accessed by thieves does, in fact, breach the terms of the implied contract. Defendants promised to safeguard patients' Private Information, and disclosure of 233,000 patients' Private Information to identity thieves is most certainly a breach of that promise. (FAC ¶ 50). *See e.g.*, *Yahoo!*, 2017 WL 3727318, at *44, 47.[20]

Finally, Defendants argue that "in the healthcare context, it has been held in California that pricing is an essential term of an implied contract" and that Plaintiffs' have not alleged a meeting of the minds regarding that term. Yet, Defendants' case law to support this argument is inapposite. In *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017), the court determined that pricing was an essential term between the parties where the amount paid by defendant to plaintiff was the *entire issue in dispute*. Here, the amount paid by Plaintiffs to Defendants—whether directly or indirectly—is not in dispute, and

---

[19] Although the court in *Yahoo* dismissed the plaintiffs' UCL fraud claim because they did not allege they actually read the defendant's privacy policy, the court did not hold this was a basis to dismiss the plaintiffs' breach of contract claims. *See Yahoo!*, 2017 WL 3727318, at *44, 47.

[20] *See also Hameed-Bolden v. Forever 21 Retail, Inc*., No. CV 18-03019 SJO, 2018 WL 6802818, at *3 (C.D. Cal. Oct. 1, 2018) (finding implied contract where "Defendants invited Plaintiffs and Class members to make purchases using their credit or debit cards" and thus agreed to "provide[] goods and services and . . . to safeguard and protect their Customer Data."); *Gordon v. Chipotle Mexican Grill, Inc*., 344 F. Supp. 3d 1231, 1247–48 (D. Colo. 2018) ("Plaintiffs state enough facts to plausibly allege the elements for an implied contract regarding the security of their PII that [Defendant] obtained in their transactions.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

obviously there were pricing terms in place between the parties prior to Plaintiffs entrusting Defendants with their Private Information.

F.     **Plaintiffs State a Claim for Unjust Enrichment**

Defendants incorrectly assert that there is no independent claim for unjust enrichment under California law. In *Bruton v. Gerber Prod. Co*., 703 F. App'x 468, 470 (9th Cir. 2017), the Ninth Circuit reversed the district court's dismissal of plaintiff's unjust enrichment claim, noting that at the time of the dismissal, "California's case law on whether unjust enrichment could be sustained as a standalone cause of action was uncertain and inconsistent. But since then, the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed[.]" *Id*. at 469; *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C*., 61 Cal. 4th 988, 994 (2015) (recognizing cause of action for unjust enrichment); *Facebook*, 956 F.3d at 599 ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss.").

"Under California law, . . . [c]ourts have concluded that the failure to secure a plaintiff's data can give rise to an unjust enrichment claim." *Rudolph v. Hudson's Bay Co*., No. 18-cv-8472 PKC, 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019). "They reason that a defendant has accepted the benefits accompanying plaintiff's data but does so at the plaintiff's expense by not implementing adequate safeguards, thus making it 'inequitable and unconscionable' to permit defendant to retain funds that it saved by 'shirking data security' and leaving the plaintiff 'to suffer the consequences.'" *Id*. (citation omitted); *see also Target*, 66 F. Supp. 3d at 1178 (upholding unjust enrichment claim); *Premera*, 198 F. Supp. 3d at 1201 (similar).

Plaintiffs allege (1) Defendants made assurances as to their cybersecurity practices (FAC ¶¶ 210, 211, 212); (2) Plaintiffs conferred a monetary benefit on Defendants in the form of purchased services (FAC ¶ 379); (3) Plaintiffs expected that a portion of their payments would go toward "Defendants' network and the

- 19 -

administrative costs of data management and security" (FAC ¶ 381); and (4) Defendants had knowledge of, and "received and retained" this benefit, which was inequitable (FAC ¶¶ 380, 382, 384). These allegations satisfy the elements of unjust enrichment: "'the receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Rudolph*, 2019 WL 2023713, at *12 (quoting *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)).

### G.  **Plaintiffs Allege Breach of Fiduciary Duty**

At the outset, the existence of a confidential relationship is a question of fact for the jury or the trial court. *See Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983); *Rieger v. Rich,* 163 Cal. App. 2d 651, 663 (1958). Nevertheless, Plaintiffs have, in fact, adequately alleged facts to support the existence of a fiduciary relationship between the parties.

An action for breach of fiduciary duty requires the plaintiff to allege the existence of a fiduciary relationship, defined as "any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Gilman v. Dalby,* 176 Cal. App. 4th 606, 612–13 (2009). There are *two kinds* of fiduciary duties—those imposed by law and those undertaken by agreement. *Maglica v. Maglica*, 66 Cal. App. 4th 442, 447 (1998). Traditional examples of fiduciary relationships imposed by law include trustee and beneficiary, agent and principal, and attorney and client. *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 270-71 (2003).

Ambry requires Plaintiffs to disclose personal information, represents that it has the knowledge and ability to protect that information, and has superior knowledge than Plaintiffs regarding the nature and sufficiency of those protections. (FAC ¶¶ 210, 211, 212, 213). This is the type of scenario in which the circumstances between two parties are such that one party is justified in entrusting its protection to the other, and the other has a fiduciary duty not to betray that trust.

*Lovell v. P.F. Chang's China Bistro, Inc.*, No. 14-cv-1152 RSL, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015), is entirely inapposite. That court dismissed plaintiff's breach of fiduciary duty claim, citing the fleeting nature of the relationship between the parties (restaurant and customers), defendant's lack of representations to plaintiff regarding security protocols, that defendant did not require or induce plaintiff to use a credit card, and plaintiff used his credit card for his own convenience. *Id.* at *4. Unlike *Lovell*, here Defendants had an ongoing relationship with Plaintiffs and made representations about Ambry's security protocols, and Plaintiffs were required to provide their Private Information to obtain Ambry's services. Conveying Private Information to Defendants for the purpose of obtaining potentially life-saving genetic testing is a far cry from the decision to pay with a credit card at a restaurant.

### H.   **Plaintiffs Allege Breach of Confidence**

The elements of this claim are: "(1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Entm't Research Group, Inc. v. Genesis Creative Group*, *Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997). Despite Defendants' suggestion that Plaintiffs "failed to and cannot plausibly plead several breach of confidence elements," Defendants' only argument for dismissal is predicated on an invented "voluntary disclosure" requirement. (Mot. at 21.)

Defendants cite to a handful of cases in support of their position, but remarkably absent from all of Defendants' cases is any reference to a voluntary disclosure requirement for a breach of confidence claim—because one does not exist. In *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019), the court actually noted that "the harm underlying [a breach of confidence action] transpires when a third party gains unauthorized access to a plaintiff's personal information."

The court in *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546, 1555-56 (2014), addressed the voluntary disclosure prong of *a CMIA claim*, but the did not address a breach of confidence claim. Indeed, the court in *In re Capital One Consumer Data Security Breach Litigation*, held that breach of confidence is plausibly pled under California law in a data breach case where, like here, sensitive information is entrusted to a company that fails to protect it. --- F. Supp. 3d ---, 2020 WL 5629790 (E.D. Va. Sept. 18, 2020). Plaintiffs allege all of the information at issue in *Capital One* (as well as PHI) and there is no basis for a contrary ruling here.

Defendants cite a secondary source that carries no legal force to suggest there is a "model template for a breach of confidence complaint," and that Plaintiffs "must allege" that Defendants "knowingly used and distributed [Plaintiffs'] confidential idea." (Mot. at 21). Not only is this not law, but the cited "model complaint" concerns "Literary Property and Ideas." LaMothe, Louise, CAL. CIV. PRAC. BUS. LITIG. § 68.28 (2020).

Indeed, Defendants' statement that "a breach of confidence claim is not recognized in a data breach case where, as here, plaintiffs fail to allege that defendants voluntarily disclosed the confidential information to an unauthorized third party," is unsupported and simply not true.[21] *See e.g.*, Alicia Solow-Niederman, *Beyond the Privacy Torts: Reinvigorating A Common Law Approach for Data Breaches*, 127 Yale L.J. Forum 614, 633 (2018) (noting that a breach of confidence takes place when the data holder's "operations in fact permit a breach of [personal] data"). Through their ethically questionable argument, Defendants attempt to bootstrap the "voluntary disclosure" prong of a CMIA claim to a claim

---

[21] The two cases cited by Defendants in support of this misstatement of the law— *Bank of Am., N.A. v. Hensley Props., L.P.*, No 07-cv-1584 GEB,2008 WL 2724875, at *7 (E.D. Cal. July 11, 2008) and *Young v. United States Dep't of Justice*, 882 F.2d 633, 640-45 (2d Cir. 1989)—are wholly inapposite. Neither of the cases has anything to do with data breaches or voluntary disclosures, and instead they both address whether banks owe a duty to keep their client data confidential.

for breach of confidence—a separate claim with separate elements. The Court should deny Defendants' motion to dismiss the breach of confidence claim.

## I.   Plaintiffs State a UCL Claim

Under California's Unfair Competition Law ("UCL"), a claim for unfair competition arises out of "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Although a party can establish a viable UCL claim under any of the three prongs, only one is necessary. *Poghosyan v. First Fin. Asset Mgmt.*, No. 1:19-cv-01205-DAD, 2020 WL 433083, at *8 (E.D. Cal. Jan. 28, 2020). Here, Plaintiffs establish liability on all three prongs.

### 1.   Plaintiffs Adequately Allege Unlawful Business Practices

With regard to Plaintiffs' HIPAA allegations, it is true that allegations "in summary fashion that Defendant failed to implement certain policies and procedures and failed to protect Plaintiffs' health information," are not sufficient to establish a violation of HIPAA. *Gardner v. Health Net, Inc.*, No. 10-cv-11597979, 2010 WL 11597979, at *10 (C.D. Cal. Aug. 12, 2010). However, identification of the specific provisions of HIPAA violated by Defendants—taken in context with general factual allegations of the complaint—are sufficient to establish a violation of HIPAA. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (identification of "specific provisions of HIPAA" as well as "other allegations in the [] complaint" that "describe with reasonable particularity the facts supporting the violation" are sufficient to establish violation of HIPAA).

As Defendants admit, Plaintiffs plead a series of specific HIPAA violations in the FAC (FAC ¶¶ 244-47), and Plaintiffs allege Defendants violated all of these provisions. (FAC ¶ 247). Taken in the broader context of the factual allegations of the FAC describing with reasonable particularity how Defendants violated each specific provision (*i.e.*, that Defendants failed to comply with them), Plaintiffs clearly make out a claim against Defendants for violation of HIPAA in support of Plaintiffs' UCL claim.

Defendants also argue Plaintiffs cannot establish a violation of the CCRA because the CCRA does not apply to health care providers regulated under the CMIA. However, whether Defendants are, in fact, healthcare providers under the circumstances is a factual determination not appropriate for a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (factual issues not decided on motion to dismiss). Further, Plaintiffs are entitled to plead in the alternative, should Plaintiffs' claims under the CMIA fail. *Coleman v. Standard Life Ins., Co.*, 288 F. Supp. 2d 1116 (E.D. Cal 2003). Finally, even if Plaintiffs' UCL claim cannot be premised on violation of the CCRA, the claim still stands in light of Defendants' violations of HIPAA and of Cal. Health & Safety Code § 1280.15(b)(2).

With regard to Defendants' argument that Plaintiffs have not alleged facts supporting their claim for undue delay in notifying Plaintiffs of the Breach, Defendants ignore Plaintiffs' allegations that Defendants did not notify Plaintiffs of the Breach for almost three months after the Breach, and almost a month after Defendants notified the government. (FAC ¶¶ 3, 50, 52, n.4).

This unreasonable delay prevented Plaintiffs from taking steps to protect their Private Information from being used for identity theft and fraud. (FAC ¶¶ 457, 461, 462); *see also Patton v. Experian Data Corp.*, No. SACV 17-01559-JVS, 2018 WL 6190349, at *12 (C.D. Cal. Jan. 23, 2018) (finding injury from delayed notice because plaintiffs could not "take the appropriate steps to protect their identities and their finances"); *Yahoo!*, 2017 WL 3727318, at *41 (injury established from delay because if not for defendants' delay, "[p]laintiffs could have taken earlier steps to mitigate the fallout from their information being stolen, such as replacing their credit cards, freezing accounts, or placing credit alerts on their accounts").

Finally, Defendants argue Plaintiffs have not alleged a violation of Cal. Health and Safety Code § 1280.15(b)(2) sufficient to support the "unlawful" prong of the UCL. Yet, as Defendants admit, section 1280.15(b)(2) requires notification of a data breach "no later than 15 business days after the unlawful or unauthorized

access, use, or disclosure has been detected." Plaintiffs allege—and public record shows—that Defendants notified the Department of Health and Human Services of the Breach on March 22, 2020. (FAC ¶ 52, n.4). And Defendants did not notify Plaintiffs of the breach until April 15, 2020—more than 15 business days after Defendants notified DHHS, and obviously, more than 15 business days after Defendants detected the Breach, since Defendants could not have disclosed the breach to DHHS *before* they detected it.

### 2.   **Plaintiffs Properly Allege Unfair and Fraudulent Violations**

With regard to the unfair prong of the UCL, the Ninth Circuit observed, in *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018), that "the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." The *Hodsdon* court held that "unfair" conduct occurs when the alleged practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hodsdon*, 891 F.3d at 866. Other California courts apply a balancing test that weighs the utility of the defendant's conduct against the gravity of the harm. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012). Still other California courts require that unfairness "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 989 (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)).

Regardless of the test, Plaintiffs adequately allege that Defendants' conduct in allowing the Breach to occur and in delaying notification concerning it—are "unfair." The FAC properly pleads that disclosure of Plaintiffs' genetic and other Private Information—highly sensitive information that is immutable to each Plaintiffs—was substantially injurious to Plaintiffs. (FAC ¶¶ 457, 461, 462.) Plaintiffs allege the gravity and permanence of the harm they suffered as a result. (FAC ¶¶ 457.) Finally, the harm to Plaintiffs is directly related to the established

public policy of maintaining the security of private information, as codified in the CMIA, the CCRA, HIPAA, and Cal. Health and Safety Code § 1280.15(b)(2). Plaintiffs may prevail at trial on a claim for an "unfair" UCL violation.

Plaintiffs also allege Defendants engaged in fraudulent business practices under the UCL. (FAC ¶ 416 ("Defendants' business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Private Information they provided to Defendants will remain private and secure, when in fact it has not been maintained in a private and secure manner, and that Defendants would take proper measures to investigate and remediate a data breach, when Defendants did not do so.").) Although Defendants call this allegation is conclusory, they fail to consider other allegations in the Complaint.

Indeed, Plaintiffs allege Defendants made promises in their Privacy Policy and other privacy statements from Ambry's website. (FAC ¶¶ 209, 210, 211, 212, 213, 359, 362.) Plaintiffs—either personally or via a health insurance provider—paid Ambry for its services in reliance on Ambry's promises. (FAC ¶¶ 62, 67, 72, 78, 83, 89, 95, 101, 108, 114, 119, 124, 132, 137, 143, 149, 154, 165, 170, 175, 181, 189, 196, 205, 268, 368, 381, 385, 418.) Thus, Plaintiffs allege a UCL claim based on fraud. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1039 (N.D. Cal. 2019) (holding a fraud-based UCL claim survives a motion to dismiss if "sufficiently detailed to give us some assurance that plaintiff's theory has a basis in fact").

### 3.  **Plaintiffs Adequately Allege UCL Standing**

There are "innumerable ways" to demonstrate economic injury under the UCL. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (collecting cases). "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.*

- 26 -

Numerous courts have held that plaintiffs alleging they would not have paid as much for defendants' goods or services had they known of defendant's inadequate security practices have standing under the UCL. *See, e.g.*, *In re Anthem, Inc.,* 2016 WL 3029783, at *15, 30 (allegations that plaintiffs spent more money on insurance premiums than plaintiffs would have spent had they known of Anthem's inadequate security practices were sufficient to establish UCL standing); *Adobe,* 66 F. Supp. 3d at 122 (allegations that plaintiffs spent more on Adobe products than they would have had they known Adobe was not providing reasonable security sufficient to allege standing under the UCL); *but see In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (dismissing plaintiffs' UCL claim where Plaintiffs did "not allege that they paid any premiums (or any money at all) to Facebook *to potentially give rise to standing* under California law").

In contrast, Plaintiffs specifically allege, as enumerated *supra*, that they paid Defendants—either personally or via a health insurance provider—for their genetic testing services in reliance on Defendants' promises. (FAC ¶¶ 268, 368, 381). Plaintiffs would not have paid Defendants had Plaintiffs known Defendants lacked security practices adequate to safeguard its patients' Private Information from theft or disclosure. (FAC ¶¶ 62, 67, 72, 78, 83, 89, 95, 101, 108, 114, 119, 124, 132, 137, 143, 149, 154, 165, 170, 175, 181, 189, 196, 205, 385, 418). Thus, Plaintiffs suffered a direct economic injury as a result of Defendants' Breach and have UCL standing.

## J.      **Plaintiffs Allege a CMIA Claim**

The CMIA prohibits entities such as Defendants from knowingly or negligently releasing an individual's Confidential Medical Information ("CMI") and obligates a covered entity to treat CMI in a "manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code §§ 56.36, 56.101(a); *Premera*, 198 F. Supp. 3d at 1201. A CMIA plaintiff must show the defendant negligently caused the release of "individually identifiable

- 27 -

information . . . regarding a patient's medical history, mental or physical condition, or treatment," Cal. Civ. Code § 56.05, and that an unauthorized third party "viewed or otherwise accessed" the information, *Regents of Univ. of Cal. v. Superior Cou*rt, 220 Cal. App. 4th 549, 553 (2013).

Defendants argue for dismissal *with prejudice* because: 1) Plaintiffs have not established that their Private Information—including medical or health information—was actually viewed by an unauthorized individual; and 2) Plaintiffs have not established that Defendants disclosed Plaintiffs' Private Information through an "affirmative or knowing act." Plaintiffs allege both.

### 1. Plaintiffs Allege Their Private Information Was Viewed by Unauthorized Individuals

Plaintiffs affirmatively plead that unauthorized parties viewed Plaintiffs' confidential medical information. (FAC ¶¶ 6 ("Private Information is now in the hands of, and has been viewed by, identity thieves."); 57 ("unauthorized parties have accessed and viewed Plaintiffs' and Class Members' unencrypted, unredacted information"); 403 ("But for Defendants' disclosure of Plaintiffs' and Class Members' Private Information . . . their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties"; 430 ("Private Information, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity"); 435 ("personal medical information was viewed by, released to, and disclosed to third parties without Plaintiffs' and Class Members' written authorization.").)

The cases upon which Defendants rely are factually inapposite, as they involved stolen hardware with password-protected or encrypted medical information, without evidence suggesting unauthorized parties viewed, accessed, or were even aware that of the medical information. *See Regents*, 220 Cal. App. 4th at 549; *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014).

Here, Plaintiffs do not allege that devices *containing* their Private Information were stolen, but instead their Private Information was accessed by hackers. (FAC ¶¶ 49, 50, 53, 54.) The FAC details specific information that Ambry's Chief Compliance Officer admitted was accessed by the hackers, including "name, date of birth, Ambry account number, insurance information, and medical information." (FAC ¶ 54). Although Ambry's Notice of Breach failed to provide basic details of the breach limiting the details that Plaintiffs could allege (FAC ¶ 56), more specifics are not required at the pleading stage, particularly where Defendants are the only ones with full knowledge of the full extent of their improper disclosures. *See E&J Gallo Winery v. EnCana Energy Services, Inc.*, No. 03-cv-5412 AWI, 2004 WL 7342782, at \*5 (E.D. Cal., 2004) ("The leeway typically granted a pleader is greater where the opposing party has exclusive control over information.").

Plaintiffs not only allege that their Private Information has been "viewed" by the hackers, but that it already has been misused in a variety of ways including, to date, through unsolicited, suspicious phishing telephone calls, unsolicited emails and text messages, unauthorized access to Google account passwords, "crashed" email accounts, attempted passing of "bad checks," unauthorized credit inquiries, and fraudulent charges on various Plaintiffs' credit cards. (FAC ¶¶ 60, 73, 84, 90, 96, 102, 125, 129, 130, 138, 144, 162, 163, 164, 176, 182, 183, 184, 190, 191, 197, 198, 201, 202, 206.) Courts have held these types of factual allegations "sufficient to withstand a motion to dismiss." *Premera*, 198 F. Supp. 3d at 1202.

## 2. An Affirmative Act of Disclosure Is Not Necessary

Defendants argue that Plaintiffs have failed to establish an "affirmative or knowing" act of disclosure required by the CMIA. However, Defendants seem to conflate Section 56.10 of the CMIA—requiring an affirmative act of disclosure— and Section 56.36 of the CMIA requiring a negligent "release" of Plaintiffs' Private Information. In this context, a "release" need not be an affirmative, communicative act, but can be accomplished by "negligently allowing information to end up in the

possession of an unauthorized person." *Sutter Health*, 227 Cal. App. 4th at 1554-55 ("[N]egligent release under section 56.36 does not require an affirmative communicative act but instead can be accomplished by negligently allowing information to end up in the possession of an unauthorized person."); *see also Regents*, 220 Cal. App. 4th at 565 ("[A] health care provider who has negligently maintained confidential medical information and thereby allowed it to be accessed by an unauthorized third person—that is, permitted it to escape or spread from its normal place of storage—may have negligently released the information within the meaning of CMIA."). Thus, to establish a violation of the CMIA, a plaintiff must merely show that the defendant negligently caused the release of "individually identifiable information . . . regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.36

Plaintiffs allege that Defendants knew or should have known their information security practices were inadequate. (FAC ¶ 351.) Defendants knew or should have known their computer systems and technologies for accepting and securing Plaintiffs' and Class Members' Private Information had numerous vulnerabilities. (FAC ¶ 404, 228.) Plaintiffs further allege that KMPM intentionally failed to take adequate and reasonable measures to ensure Ambry's data systems were protected against unauthorized intrusions, despite its due diligence prior to acquisition of Ambry. (FAC ¶ 41.) Plaintiffs allege Defendants knew or should have known that the inadequate data security measures at Ambry would likely result in a data breach such as the Breach that did, in fact, occur in 2020. (FAC ¶ 351.) Thus, at the very least, Defendants' actions resulted in a negligent "release" of Plaintiffs' Private Information sufficient to establish liability under the CMIA.

### K.   **Plaintiffs' CLRA Claim Is Well-Pled**

#### 1.   **Plaintiffs Satisfied the CLRA's Affidavit Requirement**

Defendants disingenuously argue that Plaintiffs' CLRA claim should be dismissed for failure to file an affidavit "concurrently with the FAC." They fail to

mention that such an affidavit was filed the day after the FAC. (Dkt No. 58.) Accordingly, this argument fails.[22]

### 2. Plaintiffs' CLRA Claims Should Not Be Dismissed Under the Pre-Filing Notice and Demand Requirements

Defendants request dismissal of Plaintiffs' CLRA claims with prejudice for failure to provide pre-suit notice, despite the fact that Defendants have long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Breach, the first of which were filed by Co-Lead Counsel on or about April 22, 2020. (FAC ¶ 439). Accordingly, dismissal would be unwarranted in light of the purpose of the notice requirement—which is to provide Defendants an opportunity to avoid liability by correcting the alleged wrong. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009). As Defendants are the parties with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, any pre-suit notice would not put Defendants in a better position to evaluate those claims.

Instead of dismissal with prejudice, courts dismiss CLRA damages claims without prejudice until after the notice requirement is satisfied. *Morgan,* Cal. App. 4th at 1261; *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 857 n.4 (N.D. Cal. 2012) ("Plaintiff is not prevented from amending the complaint to include a request for CLRA damages"); *Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA, 2015 WL 4272058, at *3 (S.D. Cal. June 19, 2015).[23] Thus, if the Court

---

[22] In any event, failure to file an affidavit with a CLRA claim does not require dismissal of the CLRA claim with prejudice. *See, e.g.*, *Delman v. J. Crew Group, Inc.*, No. 16-cv-919-MWF, 2017 WL 3048657, at *1 (C.D. Cal. May 15, 2017); *Oxina v. Lands' End, Inc*., No. 14-cv-2577-MMA, 2015 WL 4272058, at *4 (S.D. Cal. June 19, 2015); Cal. Civ.Code § 1780(d) ("If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action *without prejudice*.") (emphasis added).

[23] Defendants rely on *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195 (S.D. Cal. 2005) and *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) as requiring dismissal with prejudice of a CLRA claim in the absence of

determines that dismissing Plaintiffs' CLRA damages claim is required, it should do so without prejudice so that Plaintiffs may provide notice.[24]

### 3.  **Plaintiffs Sufficiently Plead Reliance**

Defendants argue that Plaintiffs have not established reliance because they do not allege that they read any of Defendants' Website Policies prior to their healthcare providers having ordered testing from Ambry, or before the receipt of Ambry's services. (Mot. at 32.) Again, this is simply incorrect. Plaintiffs allege that Defendants made promises as to the security of Plaintiffs' Private Information in Ambry's Privacy Policy and other privacy statements from Ambry's website prior to purchasing goods or services from Defendants. (FAC ¶ 208-215.) Plaintiffs allege they "reviewed and/or relied on statements made by or provided by Ambry and/or otherwise understood that Ambry would protect its patients' Private Information if that information were provided to Ambry." (FAC ¶ 363.)

Plaintiffs specifically allege that they reviewed, read, and understood Defendants' privacy statements prior to purchase of goods or services from Ambry (FAC ¶¶ 186, 193, 200) and relied on Defendants' promises. (FAC ¶ 445 ("Plaintiffs and the Class members relied upon Ambry's representations and were induced to sign up for Ambry's services and provide their Private Information which contains value in order to obtain services from Ambry.")).

---

fulfilling the notice requirement. However, courts now recognize *Morgan* as the controlling authority on this issue. *See In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 950 (N.D. Ill. 2016) (recognizing that *Morgan*, as a California Court of Appeal, definitively determined that failure to provide notice under the CLRA must only be dismissed for 30 days or more after the plaintiff complies with the requirement).

[24] Plaintiffs' claims for injunctive relief, restitution and disgorgement should not be dismissed. *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2008) (no notice required where complaint seeks injunctive relief, restitution and disgorgement rather than damages).

1

2

### L.     Plaintiffs Allege a CCRA Claim

Defendants first argue the CCRA claim fails because Plaintiffs do not allege when Defendants discovered or were notified of the Breach, and whether or when Defendants took remedial measures. (Mot. at 33.) However, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are particularly within the possession and control of the defendants or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotation marks omitted) (citing *Twombly*, 550 U.S. 544); *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."). Indeed, before the Parties are able to conduct discovery, Plaintiffs cannot allege with particularity when Defendants discovered the breach because Defendants have not disclosed that information.

Nevertheless, Plaintiffs do allege that, by Defendants' own admission in their Notice of Breach, Defendants discovered the breach between January 22 and January 24, 2020. (FAC ¶¶ 52, 54). As of the filing of the FAC, Ambry had not disclosed (and it still has not disclosed) when Defendants discovered the breach, but the facts suggest the breach went undetected for months. (FAC ¶ 51.) Plaintiffs allege that Defendants disclosed the breach to the Department of Health and Human Services on March 22, 2020 as a "Hacking/IT Incident." (FAC ¶ 53, n. 4.) Plaintiffs also allege that Ambry did not inform Plaintiffs of the breach until April 15, 2020, and thus nearly three months elapsed between the time of the breach and the time when Plaintiffs were notified of the breach. (FAC ¶¶ 52, 55, 452-464.) Thus, Plaintiffs sufficiently plead a CCRA violation.

Defendants next argue that the CCRA only applies to California residents, and therefore the CCRA claims should be dismissed as to all members of the non-California sub-classes as well as all named Plaintiffs except for Plaintiffs Cercas,

- 33 -

Pascoe, and Nakagoshi and her unnamed minor daughter, who are California residents. Plaintiffs have alleged their CCRA claim on behalf of Plaintiffs and the Nationwide Class, or alternatively, on behalf of Plaintiffs Cercas, Pascoe, and Nakagoshi and her unnamed minor daughter, and the California Subclass. (FAC, Count XI). Thus, even if Plaintiffs' CCRA claim fails as to the non-California residents, Plaintiffs CCRA claim should not be dismissed as to the California named Plaintiffs or the California Sub-Class.

Finally, Defendants ignore numerous allegations of the FAC to argue that Plaintiffs make only "a conclusory allegation" of harm arising out of Defendants' delay in notification of the breach. However, as mentioned above, Plaintiffs O'Hara, Terrano, and Volk specifically allege that they suffered fraud in February and/or March 2020—when Defendants knew about the breach but had yet to issue any notification. (FAC ¶¶ 160, 191, 201.) And, all Plaintiffs could have taken action sooner to protect themselves had they known about the Breach at that time.

Cal. Civ. Code § 1798.82(a) provides that "following discovery or notification of the breach," "disclosure shall be made in the most expedient time possible and without unreasonable delay." Defendants rely on *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1009-10 (S.D. Cal. 2014)[25] where the court held that the plaintiffs had alleged no cognizable injury due to a ten-day delay in informing plaintiffs of the breach. However, *Sony* is not comparable to the case at hand, because here Defendants did not inform Plaintiffs of the injury until almost *three months* after the Breach. (FAC ¶¶ 3, 50, 52.)

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017), is more apt. The *Yahoo!* court held plaintiffs alleged injury as

---

[25] Defendants also compare the case at hand to *Adobe*, 66 F. Supp. 3d at 1218 and *Antman v. Uber Techs., Inc.*, No. 15-cv-01175-LB, 2015 WL 6123054, at *1 (N.D. Cal. Oct. 19, 2015). However, in both of those cases the plaintiffs alleged no damage at all from the delay—inapposite to the facts at hand.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

a result of delay, reasoning that if defendant had provided prompt notification, "Plaintiffs could have taken earlier steps to mitigate the fallout from their information being stolen, such as replacing their credit cards, freezing accounts, or placing credit alerts on their accounts." *Id.* at *41. The delayed notice prevented plaintiffs from "tak[ing] these mitigation steps." *Id.*; *see also Patton*, 2018 WL 6190349, at *12 (finding injury from delayed notice).

### M.   The Illinois Plaintiffs State a Claim Under GIPA

The Genetic Information Privacy Act ("GIPA") provides a right of action for any person whose genetic testing or information derived from genetic testing was negligently, recklessly, or intentionally disclosed to another without that person's consent. (410 ILCS 513/40). Plaintiff Taglioli and the entire Illinois sub-class (the "Illinois Plaintiffs"), state a claim.

### 1.   The Illinois Plaintiffs Have Article III Standing

Defendants argue that the Illinois Plaintiffs lack Article III standing to bring their GIPA claim because they have not alleged concrete and particularized harm. However, it is well established that the risk of identity theft and time spent trying to mitigate the impact of a data breach is considered concrete harm for purposes of Article III. *See, e.g.*, *Zappos.com*, 888 F.3d at 1027 (holding plaintiffs have standing where the type of information accessed in a data breach can be used to commit identity theft); *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875, at *5 (N.D. Cal. Dec. 19, 2019) (holding risk of identity theft and loss of time constitute injury in fact); *Yahoo!*, 2017 WL 3727318, at *13 (finding injury in fact where "hackers stole the names, email addresses, telephone numbers, birth dates, passwords, and security questions of Yahoo account holders").

Defendants argue authority applying Illinois' Biometric Information Privacy Act ("BIPA")—a statute considered and amended during the same legislative session as GIPA—supports dismissal on standing grounds, but Defendants fail to cite any of the controlling authority concerning BIPA on this point. Courts including

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

the Ninth Circuit are in agreement that, "[b]ecause the privacy right protected by BIPA is the right not to be subject to the collection and use of such biometric data, [an] alleged violation of these statutory requirements . . . necessarily violate[s] the plaintiffs' substantive privacy interests . . . sufficient to confer Article III standing." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019), cert. denied, 140 S. Ct. 937, 205 L. Ed. 2d 524 (2020); *see also Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1152-56 (7th Cir. 2020). The same reasoning applies here and compels the conclusion that Plaintiffs likewise have Article III standing.

Under GIPA, there is no requirement to plead damages at all, because damages are self-evident with disclosure of one's genetic information. *See Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E.3d 1080, 1086 (Ill. Ct. App. 2018) ("'[T]he Genetic Information Privacy Act . . . provide[s] for a[n] . . . 'any person aggrieved' right of recovery and ha[s] been interpreted as not requiring actual damages be pled.'") (citations omitted)). The language of GIPA provides a cause of action for "any person aggrieved by its violation." (410 ICLS 513/40). "A person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of." *Glos v. People*, 102 N.E. 763, 766 (Ill. 1913); *see also Am. Surety Co. v. Jones*, 51 N.E.2d 122, 229 (Ill. 1943) (holding "aggrieved" means "a person who is immediately aggrieved . . . not one who is only consequently aggrieved").

The plain language of GIPA states that any person "aggrieved by a violation of this Act" may sue. "If the drafters had intended to limit the pool of plaintiffs to those plaintiffs who had been both aggrieved by a violation of the Act *and* aggrieved by some additional harm or injury, they could have easily stated that. However, they chose to state only 'a violation of this Act.'" *Sekura*, 115 N.E.3d at 1091. Thus, a plaintiff need not plead damages beyond a violation of GIPA. *See People v. Miles*, 86 N.E.3d 1210, 1215 (Ill. Ct. App. 2017) ("[T]he best indication" of the drafters' intent is "the plain and ordinary meaning of the words they chose to use"). Just as the Ninth Circuit and other courts that Defendants ignore have found that plaintiffs

alleging BIPA violations have Article III standing, so too do the Illinois Plaintiffs here have Article III standing here. *See, e.g.*, *Patel*, 932 F.3d at 1274.

### 2. The Illinois Plaintiffs Allege a Violation of GIPA

Ambry is a genetic testing company that performed genetic testing for Plaintiff Taglioli and the other Illinois Plaintiffs and disclosed their "confidential medical information." (FAC ¶¶ 20, 45, 178). Ambry's vague disclosures about the Breach admit that Illinois Plaintiffs' "medical information" was compromised. (FAC ¶ 54). Defendants argue without support that Plaintiffs cannot, as a matter of law, allege that "a release of purely genetic information causes them any harm."[26] This argument flies in the face of the plain language of GIPA, which creates a private right of action for the unauthorized disclosure of "genetic testing and information derived from genetic testing." 410 ILCS 513/15.

GIPA also mandates that "No person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30. Plaintiffs allege Ambry violated this provision of GIPA as well, which Defendants do not address in their Motion. (FAC ¶¶ 469-70.)

---

[26] Defendants baselessly argue that a GIPA claim requires "publication" of the information to the public or more than a small group; however, this argument grossly misstates the law. The plain reading of GIPA identifies no publication requirement, and Defendants cite no authority suggesting such a requirement. In *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019), the court dismissed the BIPA claim because the plaintiff did not plead facts sufficient to establish that there was a data *disclosure at all*, saying nothing of Defendants' fabricated "publication" requirement. In *Beverly v. Reinert*, 239 Ill. App. 3d 91, 99 (1992) the complaint did not involve a GIPA or a BIPA claim at all—but rather, an invasion of privacy claim—a different claim with different elements and irrelevant to GIPA. Defendants' final two cases, *Miller v. Motorola*, Inc., 560 N.E.2d 900, 903 (Ill. App. Ct. 1990) and *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 711–12 (D.C. 2009), were both predicated on public disclosure of private facts claims—*claims that necessarily contain a publication prong*—but irrelevant to the Illinois Plaintiffs' GIPA claim.

- 37 -

It is entirely plausible that Defendants disclosed "genetic information" or "genetic testing" as defined by HIPAA among the "medical information" and "diagnosis information" they admit were disclosed in the Breach. (FAC ¶ 53.) The Court must draw all reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 129. Plaintiffs allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting their GIPA claim. *Twombly*, 550 U.S. at 556.

Plaintiff Taglioli alleges she participated in genetic counseling over the course of six years prior to the breach. (FAC ¶ 178.) She authorized her genetic counselor to send her confidential and sensitive private health information to Ambry in connection with her genetic testing. (FAC ¶ 178.) Ambry was in possession of Plaintiff Taglioli's "genetic information" as defined by HIPAA. 45 CFR 160.103(3)(2). This fact, and Defendants' notification to Plaintiff Taglioli that her "medical information" may have been disclosed, is enough to state a claim.

### 3. Plaintiffs Properly Allege "Intentional or Reckless" Violations of GIPA

Defendants argue "there is no allegation that Defendants intentionally or recklessly disclosed any information." However, Defendants' argument misconstrues the plain reading of GIPA. Illinois Plaintiffs are entitled to recover at least $2,500 for each *negligent* violation of GIPA, but twice that if Ambry's violations are proven to be intentional or reckless. 410 ILCS 513/40. Evidence adduced through discovery will determine the level of Ambry's liability, but it cannot secure dismissal now on this misplaced argument. The Illinois Plaintiffs state a claim under GIPA.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.

Dated: February 22, 2021

By: /s/ Theodore Maya
Tina Wolfson (SBN 174806)
Theodore Maya (SBN 223242)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
(310) 474.9111; Fax 310.474.8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Jean S. Martin (Admitted Pro Hac Vice)
Ryan J. McGee (Admitted Pro Hac Vice)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908; Fax (813) 222-4795
jeanmartin@ForThePeople.com
rmcgee@ForThePeople.com

*Plaintiffs' Co-Lead Counsel*

Gary E. Mason
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
(202) 640-1160
gmason@masonllp.com

Melissa R. Emert (Pro Hac Vice
Forthcoming)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
(845) 356-2570; Fax (845) 356-4335
ggraifman@kgglaw.com

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC