```
                    FILED
             CLERK, U.S. DISTRICT COURT

                   4/7/2021

            CENTRAL DISTRICT OF CALIFORNIA
            BY:      CW         DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

*In Re: Ambry Genetics Data Breach Litigation*

Lead Case No.:
**SACV 20-00791-CJC (KESx)**

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT [Dkt. 63]**

## I.   INTRODUCTION

In this consolidated putative class action, 24 named Plaintiffs from 15 different states allege 13 claims against Defendants Ambry Genetics Corporation ("Ambry") and Konica Minolta Precision Medicine, Inc. ("KMPM") in relation to a 2020 data breach. (Dkt. 57 [First Amended Consolidated Class Action Complaint, hereinafter "FAC"].) Before the Court is Defendants' motion to dismiss. (Dkt. 63 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED** and Plaintiffs' First Amended

Consolidated Class Action Complaint is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND.**[1]

## II.   BACKGROUND

Ambry provides genetic testing that screens and diagnoses medical issues including hereditary cancer, hereditary cardiovascular disease, neurodevelopmental disorders, and epilepsy.  (FAC ¶¶ 1, 45.)  Between January 22 and 24, 2020, it experienced a data breach involving "customers' names, medical information, information related to customers' use of Ambry's services, and in a relatively small number of instances, Social Security numbers."  Ambry Genetics Substitute Notice, *available at* https://www.ambrygen.com/legal/substitute-notice; (FAC ¶¶ 2–3.)  Specifically, hackers accessed the email account of an Ambry employee "[f]or several days," giving them access to about 233,000 customers' information.  (FAC ¶¶ 49–50.)  It is not clear exactly when Ambry became aware of the issue.  (*Id.* ¶ 51.)  Plaintiffs allege that "[t]he Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect patients' Private Information."  (*Id.* ¶ 4.)

On April 15, 2020, Thomas Gnielinski, Ambry's Chief Compliance Officer, sent a Notice of Data Breach to the affected patients, writing:

> Our security team identified unauthorized access to an employee's email account between January 22-24, 2020 . . . . [W]e are notifying you because your personal information may have been impacted. Specifically, while we are not aware of any misuse of your personal information, the security incident

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for April 12, 2021, at 1:30 p.m. is hereby vacated and off calendar.

> may have resulted in the disclosure of your information, including your name, date of birth, Ambry account number, insurance information, and medical information.
>
> We want to assure you that we have taken steps designed to prevent this type of event from happening again, including through an ongoing effort to enhance our security measures and to provide additional training to employees.

(*Id.* ¶¶ 52–54.)  Plaintiffs allege claims for (1) negligence, (2) invasion of privacy, (3) breach of contract, (4) breach of implied contract, (5) unjust enrichment, (6) breach of fiduciary duty, (7) breach of confidence, (8) violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, et seq.) for unlawful, fraudulent, and unfair business practice, (9) violation of the Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*), (10) violation of California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), (11) violation of California Consumer Records Act (Cal. Civ. Code § 1798.82 *et seq.*), (12) violation of the Illinois Genetic Information Privacy Act (410 ILCS 513), and (13) injunctive and declaratory relief.  (*Id.* ¶ 8.)

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light

most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain well-pleaded factual allegations, not legal conclusions, that "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV.   DISCUSSION

Article III of the United States Constitution requires that courts adjudicate only actual cases or controversies. To constitute an actual case or controversy, the plaintiffs bringing a case must have standing. The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy the standing requirement, a plaintiff must show that (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the defendant's challenged actions, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). Here, Plaintiffs fail to plausibly allege that their injuries were caused by Defendants' actions.

For Article III standing to exist, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Although at the pleading stage, allegations that the plaintiff's injury was caused by the defendant's conduct may suffice, those allegations must be supported by facts, not merely legal conclusions. *Id.* at 561; *Iqbal*, 556 U.S. at 679. Plaintiffs allege no such facts here.

Plaintiffs allege that they suffered injuries including receiving suspicious telephone calls, emails, and text messages (FAC ¶¶ 60–61 [Annoni], ¶ 73 [Brodsky], 84 [Coleman], 103 [Ferrier], 125 [Jasielum], 130 [Kanawati], 144 [Nakagoshi], 156 [Neumann], 164 [O'Hara], 184 [Taglioli], 197 [Velardi]), notifications that unauthorized charges were put on their or their spouses' credit cards (*id.* ¶¶ 60–61 [Annoni], 144 [Nakagoshi]), notifications that an unauthorized party obtained their passwords (*id.* ¶ 96 [Domingues], 130 [Kanawati]), and notifications that they were logged into their accounts from new, unrecognized devices (*id.* ¶ 156 [Neumann]).

The problem is that the harm Plaintiffs allege they suffered is not fairly traceable—at least not plausibly so—to the conduct they complain of. *See Lujan*, 504 U.S. at 560 (cleaned up). For example, Plaintiffs allege that unauthorized parties obtained their passwords, but there is no allegation that any of Plaintiffs' passwords were stolen in the data breach. It is much more likely, then, that the injury Plaintiffs suffered is "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Similarly, Plaintiffs allege that unauthorized charges were put on their credit cards, but do not allege that their credit card numbers were stolen in the breach. Plaintiffs' conclusory allegations that Defendants' actions caused Plaintiffs' injury is insufficient.[2]

Indeed, numerous courts have concluded that standing is lacking where the information stolen is not sufficiently linked to the harms alleged. *See, e.g., In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) ("Although the potential repercussions of a hack of one's social security number or credit card information are straightforward—social security numbers may be used for

---

[2] For similar reasons, Plaintiffs cannot show that it is likely, as opposed to merely speculative, that their alleged injury will be redressed by a favorable decision. *See Laidlaw*, 528 U.S. at 180–81. Plaintiffs ask the Court to enter an order that "Defendants must implement and maintain reasonable security measures." FAC ¶ 483. But just as there are insufficient allegations that Defendants' alleged failure to maintain reasonable security measures in the past caused the harm Plaintiffs allege, there are insufficient allegations that the Court issuing such an order would redress Plaintiffs' injuries.

identity theft and credit card information could be used to rack up fraudulent charges—Plaintiff fails to explain *how* gaining access to one's basic contact information and driver's license number creates a credible threat of fraud or identity theft."); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (explaining that allegations regarding the theft of name, e-mail address, phone number, and mailing address, but not social security number, account number, or account password, did not suggest that hackers obtained any information that would allow them to assume the plaintiff's identity or access any of her accounts); *Antman v. Uber Technologies, Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (dismissing for lack of standing where the plaintiff alleged "disclosure only of his name and driver's license information," concluding that it was not plausible that a hacker could open a credit card in the plaintiff's name only from this information and without a Social Security number); *see also Brett v. Brooks Bros. Grp.*, 2018 WL 8806668, at *3 (C.D. Cal. Sept. 6, 2018) (finding the plaintiffs failed to show a sufficiently credible threat of future harm where hackers stole names, credit and debit card numbers along with card expiration dates and verification codes, and possibly the store zip codes where the plaintiffs made purchases, as well as the times of purchase, because this information "does not rise to the level of sensitivity of the information in *Krottner* and *Zappos*"); *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *10 (N.D. Cal. May 10, 2018) (*Antman II*) (explaining that the theft of Uber drivers' names and driver's license numbers, combined with bank account and routing numbers, "does not change the court's conclusion that the disclosed information does not plausibly amount to a credible threat of identity theft that risks real, immediate injury").

Plaintiffs rely on *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, where the court found that the plaintiffs in a Yahoo data breach class action "sufficiently alleged a plausible chain of events that link Defendants' alleged misconduct" and the information stolen by hackers "with the injuries alleged by Plaintiffs." 2017 WL 3727318, at ** 17–

18 (N.D. Cal. Aug. 30, 2017). But in that case, "hackers obtained the names, email addresses, recovery email accounts, telephone numbers, birth dates, passwords, security questions and answers, and account 'nonce' (a cryptographic value unique to each account) of Yahoo account holders," and the plaintiffs alleged that the emails the hackers obtained contained information about their finances, such as their "credit and debit card account information and Plaintiffs' Social Security numbers." *Id.* It was therefore plausible that the harms alleged were fairly traceable to the alleged wrongful conduct.

Plaintiffs request that if the Court dismisses the FAC, it dismiss without prejudice. Courts grant leave to amend unless the pleading could not possibly be cured by the allegation of other facts, such that granting leave would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Because Plaintiffs may be able to cure the deficiencies identified above, their claims against Defendants are **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

DATED: April 7, 2021

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE