Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Jean Martin (*Pro Hac Vice*)
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
(813) 559-4908; Fax: (813) 223-5402
jeanmartin@ForThePeople.com

Tina Wolfson (SBN 174806)
Theodore Walter Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
(310) 474-9111; Fax: 310.474.8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Co-Lead Counsel for the Proposed Class*

[Additional Counsel Listed on the Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| *In Re: Ambry Genetics Data Breach Litigation*<br><br>This Documents Relates To:<br>All Actions | Hon. Cormac J. Carney<br><br>Lead Case No.: 8:20-cv-00791 CJC (KESx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTELEMENT**<br><br>DATE: October 17, 2022<br>TIME:  1:30 p.m.<br>CTRM: 9B |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 17, 2022 at 1:30 p.m., in Courtroom 9B of the above-captioned Court before the Hon. Cormac J. Carney, Plaintiffs Alma Fidela Cercas, Kaitlyn Nakagoshi, Michele Pascoe, Colette Domingues, Marion Farrier, Rosemary O'Hara, Michael Annoni, Lisa Neumann, Cheryl Terrano, Sandra Brodsky, Ariann Tagioli, Debra Volk, Beth Velardi, Rachel Harkness, Benjamin Cooperson II, Laura Jasielum, Debera Hensley, Linda Stewart, Ann Hoekstra, Rula Kanawati, Elizabeth Nakagoshi, individually and as parent and guardian of E.N., Jill Barduca, Jonee Coleman, Debora Pancoast and Nicole McMurphy (collectively, "Plaintiffs"), will and hereby do move for an Order in accordance with Federal Rule of Civil Procedure 23:

(1) granting preliminary approval of the concurrently filed proposed Class Action Settlement Agreement and Release;

(2) finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied;

(3) approving the Parties' proposed Notice Plan and forms of Notice;

(4) appointing Plaintiffs as Class Representatives for the Settlement Class;

(5) maintaining the Court's prior appointment of Daniel S. Robinson of Robinson Calcagnie, Inc., Tina Wolfson of Ahdoot & Wolfson, PC, and Jean Martin of Morgan & Morgan Complex Litigation Group as Class Counsel;

(6) approving the selection of Simpluris as the Settlement Administrator;

(7) setting deadlines for any objections to, and/or requests for exclusion from, the proposed Settlement; and

(8) scheduling a Final Fairness Hearing before the Court.

///

///

1         This Motion is based upon this Notice of Motion and Motion; the

2   Memorandum of Points and Authorities set forth below; the Joint Declaration of

3   Daniel S. Robinson, Tina Wolfson, and Jean Martin; the Settlement Agreement and

4   all exhibits thereto; the Declarations of Jacob J. Kamenir of Simpluris, Cindy Cohn

5   of Electronic Frontier Foundation, Jerry Thompson of Pango Group, and Robert

6   Siciliano of IDTheftSecurity.com Inc.; the [Proposed] Preliminary Approval Order;

7   the pleadings and records on file in this action; and other such matters and argument

8   as the Court may consider at the hearing of this motion.

9

10   Dated: September 9, 2022         */s/ Daniel S. Robinson*

11                                      Daniel S. Robinson (SBN 244245)

12                                      Michael W. Olson (SBN 312857)

                                   **ROBINSON CALCAGNIE, INC.**

13                                      19 Corporate Plaza Drive

14                                      Newport Beach, CA 92660

                                   (949) 720-1288; Fax (949) 720-1292

15                                      drobinson@robinsonfirm.com

                                   molson@robinsonfirm.com

16

17                                      Tina Wolfson (SBN 174806)

                                   Theodore W. Maya (SBN 223242)

18                                      **AHDOOT & WOLFSON, PC**

19                                      2600 West Olive Ave., Suite 500

                                   Burbank, CA 91505

20                                      (310) 474.9111; Fax 310.474.8585

21                                      twolfson@ahdootwolfson.com

                                   tmaya@ahdootwolfson.com

22

23                                      Jean S. Martin (Admitted *Pro Hac Vice*)

                                   **MORGAN & MORGAN**

24                                      **COMPLEX LITIGATION GROUP**

25                                      201 N. Franklin Street, 7th Floor

                                   Tampa, Florida 33602

26                                      (813) 559-4908; Fax (813) 222-4795

                                   jeanmartin@ForThePeople.com

27

                                   *Plaintiffs' Co-Lead Counsel*

28

Gary E. Mason
**MASON LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
(202) 640-1160
gmason@masonllp.com

Melissa R. Emert
**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, NJ 07645
(845) 356-2570; Fax (845) 356-4335
ggraifman@kgglaw.com

*Attorneys for Plaintiffs and the
Proposed Class*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND .............................................................................................. 2

    A.   The Data Breach and the Procedural History of this Action ............. 2

    B.   The Parties Conducted Extensive Discovery ..................................... 4

    C.   Settlement Negotiations and Mediation .............................................. 6

III.  THE TERMS OF THE SETTLEMENT ........................................................ 7

    A.   The Settlement Class and Release....................................................... 7

    B.   The Settlement's Cash Benefits to Settlement Class Members ......... 8

    C.   Credit Monitoring and Insurance Services.......................................... 9

    D.   Ambry's Business Practice Changes.................................................. 10

    E.   Total Value of the Settlement ........................................................... 11

    F.   The Notice Plan................................................................................. 11

    G.   The Proposed Settlement Administrator ........................................... 12

    H.   Opt-Out and Objection Procedures ................................................... 12

    I.   Attorney Fees, Costs, and Class Representative Service Awards ... 13

IV.   ARGUMENT.................................................................................................. 13

    A.   The Legal Standards for Preliminary Approval................................ 13

    A.   The Settlement Merits Preliminary Approval................................... 14

        1.   The Strength of Plaintiffs' Case and the Risk, Expense,
           Complexity, and Likely Duration of Future Litigation ......... 14

        2.   The Risk of Maintaining Class Action Status Through Trial 15

        3.   The Amount Offered in Settlement ....................................... 16

        4.   The Extent of Discovery Completed and the Stage of
           Proceedings............................................................................ 17

        5.   The Experience and Views of Counsel.................................. 17

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

6.   The Presence of a Governmental Participant and the Reaction of the Class ................................................................. 18

7.   The Settlement Is Non-Collusive ........................................... 18

8.   The Proposed Notice Plan Is Appropriate ............................. 19

B.   Class Certification Is Appropriate ..................................... 20

1.   Rule 23(a) Is Satisfied ............................................................ 20

a.   The Class Is Sufficiently Numerous ....................................... 20

b.   There Are Common Questions of Law and Fact .................... 20

c.   Class Representatives' Claims Are Typical ........................... 21

d.   Class Representatives and Class Counsel Adequately Represent Class Members ........................................................ 21

2.   Rule 23(b)(3) Is Satisfied ....................................................... 22

3.   The Court Should Appoint the Named Plaintiffs as Class Representatives and Maintain Its Prior Lead Counsel Appointment ............................................................................ 23

V.   CONCLUSION ............................................................................ 24

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013) .......................20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................20, 22

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)...............24

*Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179
 (N.D. Cal. Aug. 18, 2017) ..............................................................................16

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ........................14

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ....................................................15

*Coopers v. Lybrand & Livesay*, 437 U.S. 463 (1978) ...........................................15

*Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK (C.D. Cal.
 2016) ...............................................................................................................17

*Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4,
 2022) ...............................................................................................................16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)......................21, 22

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982)..................................................22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................21

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ............22

*In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX-SRB
 (D. Ariz. Dec. 5, 2019), Dkt No. 170 ..............................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .....14, 18

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002)........................23

*In Re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.), Dkt
 No. 286 .............................................................................................................6

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-
 CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .....................................16

*In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL
 242887 (N.D. Cal. Jan. 25, 2021)...................................................................17

*In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir.
 2019) ...............................................................................................................13

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................17

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)..............14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019) .....................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ..............................22

*In re Zoom Video comm., Inc. Privacy Litig.*, No. 3:20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022)........................6

*In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017)....................................17

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017)........................23

*Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714 (N.D. Cal. Aug. 13, 2021) ...........................19

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...............20

*McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. 406.................................16

*McDonald, et al., v Kiloo ApS et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. 363 ..................................6

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).......13, 14

*Phillips Co. v. Shutts*, 472 U.S. 797 (1985) ...........................23

*Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973, 2011 WL 5443777 (C.D. Cal. Oct. 9, 2011)...........................20

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ...........................21

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ...........................14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................20, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir.) ...........................19

*Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)...........................19

**Rules**

Fed. R. Civ. P. 23 ...........................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

After more than two years of hard-fought and contentious litigation and months of settlement negotiations, the Parties present the Court with an agreement to settle Plaintiffs' claims against Defendants Ambry Genetics Corporation ("Ambry") and REALM IDx, Inc. ("Realm") on a nationwide, class basis. If approved, the Settlement will establish a non-reversionary cash fund of $12.25 million, which will be used to make direct cash payments to Settlement Class Members, to provide Credit Monitoring and Identity Theft Insurance Services to Participating Settlement Class Members, to cover Administrative Expenses, to pay Service Awards to Class Representatives approved by the Court, and to pay any Attorneys' Fee Award and Costs approved by the Court.[1] The Settlement also includes business practice changes implemented by Ambry in response to this action, valued in excess of $800,000, and potentially up to $1.4 million.

Altogether, the value of the Settlement is likely to exceed $20 million, taking into account the value of the Credit Monitoring and Identity Theft Insurance Services and the practice changes implemented by Ambry in response to this Action. This is a fantastic outcome for all approximately 225,370 Settlement Class Members, likely ranging between $62 and $88 per person in a privacy case that, at one point, was dismissed by the Court in its entirety.

The Settlement is the product of well-informed, arm's-length settlement negotiations, including a full-day mediation session in January 2022, facilitated by the Honorable Jay C. Gandhi (Ret.), and extensive further negotiations between experienced counsel that spanned approximately six months. It arrives at a critical juncture in the litigation, after extensive motion practice and discovery but before

---

[1] Capitalized terms have the meanings set forth in the Settlement Agreement ("SA"), filed concurrently herewith.

the Plaintiffs and Class Members must face the risks of class certification and summary judgment proceedings. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to all Settlement Class Members, particularly considering the substantial risks that further, protracted litigation would present. The Settlement provides outstanding benefits to Class Members, and merits preliminary approval.

## II.   BACKGROUND

### A. The Data Breach and the Procedural History of this Action

On or about April 15, 2020, Ambry, a comprehensive genetic testing company, announced a security incident (the "Data Breach") during which unauthorized parties accessed an employee's email account between January 22-24, 2020, and allegedly obtained the Protected Health Information ("PHI") and Personally Identifiable Information ("PII") of approximately 225,370 individuals. Fourth Amended Complaint ("4AC"), Dkt. 126 ¶¶ 2, 7. Following that announcement, the following related class actions were filed in federal court:

- *Cercas v. Ambry Genetics Corp.*, No. 8:20-cv-00791 (filed April 23, 2020, and assigned to this Court);

- *Brodsky v. Ambry Genetics Corp.*, No. 8:20-cv-00811 (filed April 27, 2020, and originally assigned to the Honorable Michael W. Fitzgerald);

- *Pascoe v. Ambry Genetics Corp.*, No. 8:20-cv-00838 (filed May 1, 2020, and originally assigned to the Honorable David O. Carter); and

- *McMurphy v. Ambry Genetics Corp.*, No. 8:20-cv-00904 (filed May 14, 2020, and originally assigned to the Honorable Josephine L. Staton).

Plaintiffs' counsel in these four cases self-organized and cooperated, ultimately proposing that the Court consolidate the cases and appoint Interim Class Counsel in accordance with Rule 23(g). Dkt. 29, 33. The Court granted these requests, consolidating the cases (Dkt. 30) and appointing lead counsel (Dkt. 37) as follows:

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

- Co-Lead: Daniel S. Robinson of Robinson Calcagnie, Inc.
- Co-Lead: Tina Wolfson of Ahdoot & Wolfson, PC
- Co-Lead: Jean Martin of Morgan & Morgan Complex Litigation Group
- Steering Committee: Gary E. Mason of Mason LLP (previously Mason Lietz & Klinger LLP)
- Steering Committee: Melissa R. Emert of Kantrowitz, Goldhamer & Graifman

This cooperation among Plaintiffs' counsel allowed the litigation to proceed substantively and swiftly. Plaintiffs filed a Consolidated Class Action Complaint on September 21, 2020 (Dkt. 39), and a First Amended Complaint ("FAC") on December 9, 2020 (Dkt. 57), both naming Ambry and Realm (f/k/a Konica Minolta Precision Medicine, Inc. ("KMPM")) as defendants.

Defendants moved to dismiss the FAC, which the Court granted without prejudice on April 7, 2021. At that time, the Court dismissed Plaintiffs' claims in their entirety, holding that "Plaintiffs fail[ed] to plausibly allege that their injuries were caused by Defendants' actions." Dkt. 68 at 4.

On April 21, 2021, Plaintiffs filed a redacted Second Amended Complaint ("SAC") and, on May 29, 2021, Defendants moved to dismiss and strike that SAC, which Plaintiffs opposed. Dkt. 75-76. On July 30, 2021, the Court issued an order denying both motions without prejudice. Dkt. 92. Plaintiffs also brought a motion to permit Plaintiffs to provide the Court with the unredacted SAC under seal for purposes of considering Defendants' motion to dismiss. Dkt. 84.

Defendants subsequently moved to dismiss the SAC a second time. Following briefing and oral argument, on October 18, 2021, the Court granted in part and denied in part Defendants' motion, holding:

> Defendants' motion is **GRANTED** as to Plaintiffs' claim against KMPM on the theory that it failed to engage in due diligence before it existed, and Plaintiffs' claims for breach of express contract, breach of fiduciary duty,

breach of confidence, violation of the UCL, violation of Section 56.10 of the CMIA, violation of the CLRA, and violation of the CRA as to non-California residents. Defendants' motion is **DENIED** as to Plaintiffs' claim against KMPM on the theory that it failed to take action after it had come into existence based on due diligence, and Plaintiffs' claims for negligence, invasion of privacy, breach of implied contract, unjust enrichment, violation of Section 56.101 of the CMIA, violation of the CRA as to California residents, violation of the IGIPA, and injunctive and declaratory relief. Plaintiffs' request for leave to amend is **GRANTED** as to Plaintiffs' claims under the UCL and CLRA only.

Dkt. 109 at 26. That same day, the Court issued an order requiring Plaintiffs to file the unredacted SAC, which Plaintiffs filed on October 25, 2021. Dkt. 110, 112.

On November 1, 2021, after the parties filed a stipulation substituting Realm for KMPM, Plaintiffs filed a Third Amended Complaint ("TAC"), which removed the causes of action dismissed by the Court and revised the UCL and CLRA causes of action in accordance with the Court's MTD Order. After the parties met and conferred regarding Defendants' motion to dismiss the TAC, the parties entered a stipulation to allow Plaintiffs to file the presently operative 4AC, which addressed certain concerns raised by Defendants with respect to several allegations carried over from the SAC in the TAC that Ambry asserted were inconsistent with the Court's MTD Order.

Ambry moved to dismiss the 4AC on January 10, 2022, and Plaintiffs filed an opposition on January 24, 2022. Dkts. 128-30. That motion remained pending when the Settlement was negotiated and reached, as discussed further below.

**B. The Parties Conducted Extensive Discovery**

Almost immediately after the appointment of Class Counsel, Plaintiffs issued requests under the Freedom of Information Act and similar requests under the public record acts of 20 states, obtaining many substantive responses including copies of

Ambry's disclosures to these governmental regulators. *See* Declaration of Daniel S. Robinson, Tina Wolfson, and Jean Martin ("Joint Decl.") ¶ 27. The parties exchanged initial disclosures in October and December 2020. *See id.* ¶ 27.

Plaintiffs propounded extensive written discovery upon Defendants, including two sets of detailed requests for production of documents. The parties met and conferred regarding search terms for production of documents for both offensive and defensive discovery. Ultimately, Ambry produced approximately 27,000 pages of documents in electronic format. These documents included two reports produced by two different forensic investigators that Ambry retained to investigate and aid its response to the Data Breach. *See* Joint Decl. ¶ 28. Plaintiffs also ran search terms across their custodial files for production of documents. *See id.* ¶ 28. Plaintiffs issued subpoenas to those two investigators, as well as to Kroll, which assisted with Ambry's notifications to Class Members concerning the Data Breach. *See id.* ¶ 28. Plaintiffs also teed up the issue of having Ambry produce a forensic image of the employee's laptop whose email account was accessed during the Data Breach, production of which Plaintiffs intended to move to compel if the parties were unable to reach agreement.

Plaintiffs also issued and received confirmatory discovery process. *See* Joint Decl. ¶ 29. Plaintiffs retained and consulted with a knowledgeable and highly regarded cybersecurity expert concerning the Data Breach and the forensic reports produced by Ambry concerning the same. *See id.* ¶ 29.

Ambry propounded extensive discovery on Plaintiffs. For instance, Ambry and Realm each propounded its own set of interrogatories and requests for production on each Plaintiff, the former of which ultimately required 95 separate, unique, written responses from Plaintiffs. *See* Joint Decl. ¶ 30.

As a result of this extensive discovery and expert advice, Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement. *See* Joint Decl. ¶ 31.

### C. Settlement Negotiations and Mediation

The Parties engaged in extensive, arms-length negotiations over the course of many months, including a full-day mediation session before Judge Jay C. Gandhi, a former U.S. Magistrate Judge and respected mediator. *See* Joint Decl. ¶ 32. Judge Gandhi has extensive experience in class action litigation, both from his time as a Magistrate Judge in the Central District of California and as a result of mediating many class actions, including multiple data privacy cases where a settlement was reached and subsequently approved.[2]

Ahead of the mediation session, the parties prepared comprehensive mediation briefs. *Id.* ¶ 33. Before any terms were negotiated, Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Ambry's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses. *Id.* ¶ 33.

The parties commenced mediation with Judge Gandhi on January 26, 2022, with both sides represented by experienced counsel. *Id.* ¶ 34. Although progress was made, the case did not settle at that time, and the parties continued extensive negotiations. *Id.* The parties reported the status of their negotiations to the Court on January 31, 2022, in a stipulation requesting that the Court stay the case, including the then-pending motion to dismiss the 4AC, in order to allow those negotiations to continue—a request the Court granted. Dkt. 131-32.

The parties reached an understanding in principle regarding certain terms on

---

[2]  *See, e.g.*, *In re Zoom Video comm., Inc. Privacy Litig.*, No. 3:20-cv-02155-LB, 2022 WL 1593389, at *2 (N.D. Cal. Apr. 21, 2022), *In Re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.), Dkt No. 286-1 at 7; *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019), Dkt No. 170, at 6; *McDonald, et al., v Kiloo ApS et al.,* No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. 363, at 2-3, 13; *see also* https://www.jamsadr.com/gandhi/ (last visited Sept. 8, 2022).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

March 1, 2022, and reported this to the Court on March 10, 2022. Dkt. 134. On March 11, 2022, the Court extended the stay as requested by the parties in order to facilitate ongoing settlement discussions. Dkt. 135. On July 8, 2022, the parties reported to the Court via a joint status report that the months of negotiations preceding that filing had finally resulted in a settlement in principle. Dkt. 136. In response, the Court extended the stay (Dkt. 138) and vacated the hearing on Ambry's motion to dismiss the 4AC. Dkt. 139.

The Parties also collaborated on the logistics and substance of the notice plan. Joint Decl. ¶ 36. Plaintiffs' counsel spent numerous hours obtaining and negotiating bids from three well-established, experienced, and highly regarded class action administration firms. *Id.* ¶ 36. As a result, Plaintiffs maximized the amount that would be available to the Class for payment of claims, by minimizing notice and administration costs, while ensuring that the notice and administration plan complied with all rules, guidelines, and due process requirements. *Id.* ¶ 36.

## III.   THE TERMS OF THE SETTLEMENT

### A. The Settlement Class and Release

The proposed Settlement Class is defined as:

> [T]he approximately 225,370 patients who are identified on the Settlement Class List, including Plaintiffs, whose PHI and PII was allegedly contained in an employee's compromised email account in the Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

SA ¶ 50.  Plaintiffs also seek to certify the following California Subclass:

> [T]he 25,754 patients who were citizens or residents of California as identified on the Settlement Class List and those Settlement Class

Members who can provide Reasonable Documentation demonstrating they were a California citizen or resident during the Settlement Class Period.

SA ¶ 5.  Plaintiffs further seek to certify the following Illinois Subclass:

[T]he 7,172 patients who were citizens or residents of Illinois as identified on the Settlement Class List and those Class Members who can provide Reasonable Documentation demonstrating they were an Illinois citizen or residents during the Settlement Class Period.

SA ¶ 24.

In exchange for the Settlement's benefits, all Settlement Class Members will release any claims against Defendants based on one or more of the same factual predicates alleged in the Action. *Id.* ¶ 43.

### B. The Settlement's Cash Benefits to Settlement Class Members

The Settlement provides for a non-reversionary cash fund of $12.25 million. SA ¶¶ 55, 70-72. All Class Members are eligible to receive cash payment, as well as Credit Monitoring and Identity Theft Insurance Services (discussed below). SA ¶ 80. The Settlement Fund will be used to pay: (i) Administrative Expenses; (ii) any Taxes; (iii) any Service Awards approved by the Court; (iv) any Fee Award and Costs to Class Counsel approved by the Court; (v) the cost of the Credit Monitoring and Identity Theft Insurance Services; (vi) Subclass Payments to members of the California and Illinois Subclasses; and (vii) any Out-of-Pocket Costs Payments, Documented Time Payments, and Default Time Payments.  *Id.* ¶ 73.

All Class Members may submit a Claim Form to receive: three years of free Credit Monitoring and Identity Theft Insurance Services; *and* up to a $10,000 cash payment for reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach; *and* a cash payment for time spent addressing or remedying issues that are fairly traceable to the Data Breach, in the amount of $30 per hour for up to ten hours of Documented Time (a "Documented Time Payment") or $30 per hour for up to three hours of Default Time (a "Default Time Payment"). SA ¶¶ 80(a)-(d).

- 8 -

In addition, members of the California Subclass or the Illinois Subclass will *automatically* receive an additional cash payment of up to $150 as a Subclass Payment, in light of their respective claims under California's Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code §§ 56 *et seq.*), and under the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513 ("GIPA"), which provide for statutory damages. SA ¶ 80(e).

Participating Settlement Class Members will have the option of receiving Settlement Payments via PayPal and other electronic means made available by the Settlement Administrator. In the event Participating Settlement Class Members do not exercise this option, they will receive their given Settlement Payment via a physical check sent by U.S. Mail. SA ¶ 81.

Settlement Payments will be reduced on a pro rata basis, if necessary. *Id.* ¶ 87. Every effort will be made to distribute the Net Settlement Fund to Settlement Class Members. If sufficient funds remain after the above-described payments, then a second distribution will be made to Participating Settlement Class Members with Approved Claims who cashed or deposited their Settlement Payment, provided that the average payment amount is at least $5.00. Any Residual Funds remaining after this process, or if there are not sufficient funds to allow the $5.00 second distribution, will be used to extend the Credit Monitoring and Identity Theft Insurance Services to Participating Settlement Class Members receiving that benefit for as long as possible. *Id.* ¶ 89. Any remaining amount shall then be distributed to the Non-Profit Residual Recipient, the Electronic Frontier Foundation, a 26 U.S.C. 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members, as described in more detail in the Declaration of Cindy Cohn. *Id.*

## C. Credit Monitoring and Insurance Services

Each Participating Settlement Class Member who submits a valid claim may elect to receive three years of credit monitoring and identity theft protection through

the Identity Defense Total+ plan, which is a product substantially similar to the product identified in the Settlement Agreement. The Identity Defense Total+ product is better tailored to the needs of the Class Members and valued at $19.99 per month. (Declaration of Jerry Thompson ("Thompson Decl.") ¶ 7; Declaration of Robert Siciliano. ("Siciliano Decl.") ¶ 4.) The Credit Monitoring and Insurance Services are demonstrably better than many competing products on the market and will help prevent and mitigate against identity theft. (Thompson Decl. ¶¶ 7-9; Siciliano Decl. ¶¶ 4-5.) To the extent a Participating Settlement Class Member electing to receive this benefit is already enrolled in the Identity Defense Total+, their current plan will automatically be extended by three years. (Thompson Decl. ¶ 10.) Likewise, if a Participating Settlement Class Member electing to receive this benefit is already enrolled in the Identity Guard Total Individual Plan, they will have the option to defer enrollment into the Identity Defense Total+ plan by up to one year. (Thompson Decl. ¶ 10.)

### D. Ambry's Business Practice Changes

As a result of this Action, and described in the Settlement, to date Ambry has spent in excess of $800,000, and potentially up to $1.4 million, to provide notice to Class Members of the Data Breach, including offering certain credit monitoring services; complete its investigation into the cause and scope of the Data Breach; implement additional security-related measures to ensure continued compliance with state and federal authorities; enhance policies, procedures, and training to staff on how to appropriately manage PHI; continue annual security-awareness training and individual training to certain employees and individuals handling PHI; enhance restrictions in the company to access to PHI, and continuing to require that Ambry's Chief Compliance Officer or the Chief Compliance Officer's delegate(s) approve employee access to PHI by employee type and/or by employee; institute prominent red-flag warnings for emails that come from an external source; enhance security applications, by replacing old applications and adding additional security systems;

and retain vendors that ensure Ambry meets all SOC 2-certification requirements, perform third-party risk assessments, penetration testing, and phish-testing emails to all employees. *See* SA ¶ 92.

### E. Total Value of the Settlement

Altogether, the value of the Settlement is in excess of $14 million and likely to exceed $20 million,[3] including the value of the $12.25 million Settlement Fund, the $800,000 (and potentially up to $1.4 million) that it is costing Ambry to implement the above-described practice changes, and the additional value to Class members presented by the Credit Monitoring and Insurance Services, which are worth $19.99 per month. *See* SA ¶ 93.

### F. The Notice Plan

The proposed Notice forms are attached to the Settlement as Exhibits E (Long Form Notice), F-G (Summary Notices). The Claim Form is attached as Exhibit A.

Within 14 days after the date of the Preliminary Approval Order, Defendant shall provide the Settlement Class List to the Settlement Administrator. SA ¶ 96. Within 21 days thereafter, the Settlement Administrator will disseminate the Summary Notice via U.S. Mail. Settlement Class Members may simply mail the Claim Form attached to the Summary Notice or use the unique class member identifier contained in that Notice to log onto the Settlement Website and either download a Claim Form there, or submit one online. SA ¶ 98.

The Settlement Administrator will email any Settlement Class Member for whom an email address is available and who has not submitted a valid Claim Form. The Settlement Administrator will send periodic email reminders of the opportunity to file a Claim Form prior to the Claim Deadline to such Class Members who

---

[3] For example, if four percent (4%) of the Settlement Class enrolls in Credit Monitoring and Identity Theft Insurance Services, the total value of the settlement benefits will be $20,387,410.68, but before excluding the cost of Credit Monitoring and Identity Theft Insurance Services.

continue not to submit Claim Forms. SA ¶ 99.

The Settlement Administrator will create and launch the Settlement Website, which will include the Long Form Notice; set forth all pertinent deadlines; include links to all pertinent documents, including the Claim Form; allow for electronic submission of claim forms; and inform Class Members about the Final Fairness Hearing. SA ¶ 101. The Settlement Administrator also will implement an industry-standard digital media notice campaign to provide notice of the Settlement, including a link to the Settlement Website, through various ad exchanges, websites, and mobile apps, for 30 days. SA ¶ 103. Ambry will also cause a conspicuous posting of this Settlement, including a link to the Settlement Website, to appear on some part of its website at <https://www.ambrygen.com/>. SA ¶ 102.

### G. The Proposed Settlement Administrator

Class Counsel solicited competing bids from three different, qualified class action settlement administrators. Through this competitive bidding process, Class Counsel selected, and propose that the Court appoint, Simpluris as the Settlement Administrator. *See* Joint Decl. ¶¶ 37, 52; Declaration of Jacob J. Kamenir ("Admin Decl.") ¶ 6. Simpluris estimates that the total amount of the Settlement Administration Expenses here will be $329,706, but have agreed not to exceed $345,000. *See* Admin Decl. ¶ 22.

### H. Opt-Out and Objection Procedures

Any Settlement Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period.  To be valid, the Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. SA ¶ 104. All requirements are set forth in the Long Form Notice and will be included on the Settlement Website.

Objections must be mailed to the Court, or filed through the Court's ECF system, bearing the caption *In re: Ambry Genetics Data Breach Litigation*, Case

No. 8:20-cv-00791-CJC-KES, and must include: (i) Settlement Class Member's full name, current mailing address, and telephone number; (ii) a signed statement that he or she believes himself or herself to be a Settlement Class member; (iii) the specific grounds for the objection; (iv) all documents or writings that the Settlement Class Member desires the Court to consider; and (v) a statement regarding whether the objector (or his or her counsel) intend to appear at the Final Fairness Hearing. SA ¶ 105. All objections must be postmarked or filed no later than the Objection Deadline. Any objector who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding. *Id.*

## I. Attorney Fees, Costs, and Class Representative Service Awards

Class Representatives and Class Counsel may seek Service Awards to be awarded to the Class Representatives, not to exceed $2,500. SA ¶ 111. Ambry agrees not to oppose a request for an Attorneys' Fee Award and Costs that does not exceed $4.9 million. SA ¶ 114. Motions for such awards must be filed at least 21 days before the deadline for filing objections to the Settlement, so that Class Members will have the opportunity to review such motions and object thereto. SA ¶¶ 111, 114. Class Counsel will detail their work, hours, lodestar, and expenses in their motion for an award of attorneys' fees. The work and expenses were critical to Class Counsel's success in achieving this Settlement.

## IV.   ARGUMENT

## A. The Legal Standards for Preliminary Approval

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van*

*Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004))."[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47.

**A.   The Settlement Merits Preliminary Approval**

**1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation**

Plaintiffs are confident that they would succeed if this case proceeded to trial, and that they would be able to prove that Ambry's inadequate security was the cause of the Data Breach and of Plaintiffs' alleged damages. However, Ambry vigorously

disputes all such allegations.

The risk of continued litigation is well demonstrated by the Court's dismissal of the entire case in response to Ambry's first motion to dismiss. *See* Dkt. 68. Although Plaintiffs were able to defeat a subsequent motion to dismiss, Ambry's motion to dismiss the 4AC was pending when the Settlement was negotiated. If that motion were granted, Plaintiffs' CMIA, GIPA, and CLRA claims would have been dismissed with prejudice, which would diminish the available recovery. *See* Dkt. 128. Plaintiffs opposed the motion to dismiss, and believe they would have prevailed, but long-term success is by no means ensured. In order to achieve class certification, extensive and expensive expert analysis would be required, and ultimately Plaintiffs would have to prove that their damages can be quantified using accepted principles of economics that are uniform to the entire Class. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).

Although Plaintiffs firmly believe their liability case is strong and that class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for summary judgment filed by Ambry, or ever find that Plaintiffs are entitled to damages. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for Class Members because the fact and amount of damages are uncertain.

## 2.  The Risk of Maintaining Class Action Status Through Trial

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and is "subject to revision," so Ambry would have been able to move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978).

A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if

Plaintiffs were to win class certification, there would remain a risk of losing on summary judgement or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, possibly for years.

### 3. The Amount Offered in Settlement

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

The size of the Settlement Fund here ($12.25 million), and the total value of the Settlement (in excess of $14 million and likely in excess of $20 million), in relation to the size of the Settlement Class (225,370 Class Members), compare most favorably to these and other class action settlements alleging violations of privacy and security. *See e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million

for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users).

The amount offered favors preliminary approval.

### 4. The Extent of Discovery Completed and the Stage of Proceedings

As explained above, Plaintiffs conducted extensive discovery, which included reviewing copious documents from Ambry and third parties, including detailed forensic investigative reports concerning the Data Breach at issue. This work, combined with information from discovery taken to date, and Class Counsel's work with their expert, gave Class Counsel sufficient knowledge to understand the strength and weaknesses of Plaintiffs' claims, and negotiate a Settlement that is more than fair. *See supra* Section II.B; Joint Decl. ¶¶ 26-31.

### 5. The Experience and Views of Counsel

Plaintiffs are represented by attorneys who have extensive experience and expertise in prosecuting complex class actions, including privacy class actions and, specifically, such actions arising out of data breaches compromising PHI and PII. *See* Joint Decl. ¶¶ 55-64. The Settlement provides Class Members with immediate, certain, and meaningful relief that directly addresses the issues they have experienced, or might experience, relating to the Data Breach. Moreover, the language of the release is properly tailored and limited to the claims at issue. SA ¶ 43. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate and

in the best interests of the Class. Joint Decl. ¶¶ 5, 65-68.

### 6. The Presence of a Governmental Participant and the Reaction of the Class

No governmental agency is involved in this litigation, but the Attorneys General of the United States and of each State will be notified of the proposed Settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), and will have an opportunity to raise any concerns. *See* SA ¶ 65.

Similarly, because the Class has not yet been notified of the Settlement and given an opportunity to object, this factor is not ripe. Before the Fairness Hearing, the Court will be able to review any objections or comments received from Class Members, along with a full accounting of all requests for exclusion.

### 7. The Settlement Is Non-Collusive

This litigation was hard-fought, and the Settlement only was reached after extensive, arm's length negotiations that spanned months and followed extensive discovery and motion practice and a formal mediation. The Settlement is the product of arms' length negotiations between experienced counsel, including a full-day mediation before Judge Gandhi, a professional third-party neutral mediator at JAMS who is a former Magistrate Judge in this District. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness"). Although the Settlement includes a clear sailing provision, such provisions are "not prohibited," and the Settlement easily withstands "great[] scrutiny," meriting preliminary approval for all the reasons discussed above. *Id.* at 949. This is especially true here because 1) the attorney fees were negotiated after all other materials terms of the settlement, 2) this is a non-reversionary cash settlement, 3) the majority of the cash being provided by Ambry for this Settlement will be provided to the Settlement Class, and 4) the Settlement is in no way conditioned on the approval of the fee request. SA ¶ 116; *see also Kastler v. Oh My Green, Inc.*,

- 18 -

No. 19-CV-02411-HSG, 2021 WL 3604714, at *9 (N.D. Cal. Aug. 13, 2021) ("given that counsel will not receive a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court does not find that the clear sailing provision weighs against preliminary approval.").

### 8.  The Proposed Notice Plan Is Appropriate

"The court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005). "[N]otice is adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (citation omitted).

Subject to Court approval, the Parties have selected Simpluris as the Settlement Administrator. The Notice plan agreed to by the Parties and approved by Simpluris includes individual, direct notice via U.S. Mail to all Class Members. SA ¶ 98. The Settlement Administrator also will email Class Members for whom an email address is available, who do not respond to the mailed Notice. *Id.* ¶ 99. In addition, Notice will be disseminated via a digital campaign, through the Settlement Website, and through Ambry's website. SA ¶¶ 101-03.

The Notice forms are clear, concise, and informative. *Id.* Exs. E (Long Form Notice), F (Nationwide Summary Notice), G (Summary Notice to California and Illinois Subclasses). Class Members simply need to mail back the Claim Form attached to the Summary Notice they receive in the mail or visit the Settlement

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Website to file claims. *Id.* ¶ 98.

## B.    Class Certification Is Appropriate

Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'" *Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973, 2011 WL 5443777, at *2 (C.D. Cal. Oct. 9, 2011) (quoting *Amchem*, 521 U.S. at 621). All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### 1.    Rule 23(a) Is Satisfied

#### a.    The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Here, joinder of all approximately 225,370 Class Members would be impractical, to say the least, as would 24,754 California Subclass Members and 7,172 Illinois Subclass Members. The Classes are sufficiently numerous.

#### b.    There Are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden").

Here, common issues of law and fact affect the Class uniformly and satisfy the commonality requirement, including, among other things, whether Ambry's security practices prior to, and its response following, the Data Breach were

negligent. Ambry's conduct with respect to all Settlement Class Members was the same. In addition, whether Ambry violated the CMIA applies to all California Subclass Members and whether Ambry violated GIPA applies to all Illinois Subclass Members. The commonality requirement of Rule 23(a) is satisfied.

### c. Class Representatives' Claims Are Typical

Rule 23(a)(3)'s typicality requirement is satisfied if the claims of the named class representative arise "from the same course of conduct that gives rise to the claims of unnamed Class Members to bring individual actions." *Thomas v. Baca*, 231 F.R.D. 397, 401 (C.D. Cal. 2005); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[C]laims are 'typical' if they are reasonably co-extensive with those of absent Class Members; they need not be substantially identical."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

Here, Plaintiffs' and Class Members' claims arise from the same nucleus of facts—the Data Breach—and are based on the same allegedly deficient security practices. Moreover, if CMIA applies to the representatives of the California Subclass then it also applies to all California Subclass Members, and if GIPA applies to the representatives of the Illinois Subclass then it also applies to all Illinois Subclass Members. Accordingly, Rule 23(a) typicality requirement is satisfied.

### d. Class Representatives and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class," which requires that the named Plaintiffs and their counsel not have conflicts of interest with the proposed Class. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.*

*Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985; *Amchem*, 521 U.S. at 625-26 ("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Here, Plaintiffs and their counsel are adequate. Plaintiffs do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs and Class Counsel have vigorously prosecuted this Action on behalf of the Settlement Class and Subclasses, and will continue to do so.

### 2.  Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class *predominate* over any questions affecting only individuals; and (2) the class action mechanism is *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the settlement context, the manageability criterion of Rule 23(b)(3)(D) does not apply. *Amchem*, 521 U.S. at 620.

**Predominance**: Every Class Member was a victim of the same Data Breach caused by the same allegedly deficient security practices. Central common questions can be resolved for all members of the proposed Settlement Class in a single adjudication.  Similarly, whether Ambry violated the CMIA and GIPA is central to all California and Illinois Subclass members, respectively. "Common questions that yield common answers" and are "apt to drive the resolution of this case" predominate over any individual issues. *Dukes*, 564 U.S. at 345; *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

**Superiority:** A class action is the only reasonable method to fairly and

efficiently adjudicate Class Members' claims against Defendants. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution through individual actions is impracticable—the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

### 3. The Court Should Appoint the Named Plaintiffs as Class Representatives and Maintain Its Prior Lead Counsel Appointment

This Settlement would not have been possible had Plaintiffs not stepped forward to represent the interests of the Settlement Class. These proposed Class Representatives consistently have been involved in the litigation, providing valuable insight and useful facts and answering discovery, allowing Class Counsel to effectively litigate this action, perform discovery, and negotiate this Settlement. *See* Joint Decl. ¶¶ 53-54. Plaintiffs regularly communicated with Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved, and its administration completed. *Id.*

Class Counsel, for their part, are qualified and experienced in conducting class action litigation, especially cases involving consumer protection. *See* Joint Decl. ¶¶ 55-64 & Exs. 1-3. Class Counsel vigorously prosecuted this action and will continue to do so through final approval. Class Counsel litigated the case, overcame Ambry's attempts at dismissal, conducted extensive discovery, and successfully negotiated this Settlement. *See* Joint Decl. ¶¶ 15-38; *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (evaluating adequacy of representation, a court may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself");

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

The Court previously appointed proposed Class Counsel as Interim Class Counsel. *See* Dkt. 37. Considering their work in this Action, their collective expertise and experience in handling similar actions, and the resources they committed to representing the class, they should be appointed Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## V.   CONCLUSION

For all the reasons discussed above, Plaintiffs request the Court preliminarily approve the proposed Settlement, find that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Rule 23(a) are likely to be satisfied, approve Notice and the selection of the Settlement Administrator, appoint Plaintiffs as Class Representatives for the Settlement Class, maintain the Court's prior appointment of Daniel S. Robinson of Robinson Calcagnie, Inc., Tina Wolfson of Ahdoot & Wolfson, PC, and Jean Martin of Morgan & Morgan Complex Litigation Group as Class Counsel, and set a Final Fairness Hearing in accordance with the following proposed schedule:

| Event / Deadline | Proposed Time for Compliance |
| --- | --- |
| All parties to direct Simpluris to provide CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval |
| Simpluris to provide Notice to the Court of compliance with CAFA requirements | Within 10 days of providing notice to appropriate governmental officials under CAFA |
| Ambry to provide Settlement Class List to Administrator | Within 14 days after entry of the Preliminary Approval Order.  SA ¶ 96. |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

| Event / Deadline | Proposed Time for Compliance |
|---|---|
| Administrator to commence dissemination of Notice to the Settlement Class ("Notice Date") | Within 21 days of Settlement Administrator's receipt of the Settlement Class List. SA ¶ 29. |
| Objection Deadline | 60 days after the Notice Date. SA ¶ 32. |
| Exclusion (Opt Out) Deadline | 60 days after the Notice Date. SA ¶ 104. |
| Deadline to file Motions for Award of Service Payments and for Attorneys' Fee Award and Costs | 21 days prior to the Objection Deadline. SA ¶ 114. |
| Claims Deadline | 90 days after the Notice Date. SA ¶ 8. |
| Deadline to file Motion for Final Approval | At least 28 days before the Final Approval Hearing. Local Rule 6-1. |
| Final Fairness Hearing | Approximately 110 days after the Notice Date, but in no event less than 90 days after CAFA Notice to appropriate government officials. SA ¶ 23; 28 U.S.C. § 1715(d). |

Dated: September 9, 2022

*/s/ Daniel S. Robinson*
Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
(310) 474.9111; Fax 310.474.8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com

Jean S. Martin (Admitted *Pro Hac Vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908; Fax (813) 222-4795
jeanmartin@ForThePeople.com

*Plaintiffs' Co-Lead Counsel*

Gary E. Mason
**MASON LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
(202) 640-1160
gmason@masonllp.com

Melissa R. Emert
**KANTROWITZ GOLDHAMER &**
**GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
(845) 356-2570; Fax (845) 356-4335
ggraifman@kgglaw.com

*Attorneys for Plaintiffs and the*
*Proposed Class*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2022, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: September 9, 2022

<u>*/s/ Daniel S. Robinson*</u>
Daniel S. Robinson

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL