Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Tina Wolfson (SBN 174806)
Theodore Walter Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
(310) 474-9111; Fax: 310.474.8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Jean Martin (*Pro Hac Vice*)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
(813) 559-4908; Fax: (813) 223-5402
jeanmartin@ForThePeople.com

*Co-Lead Counsel for the Proposed Class*
[Additional Counsel Listed on the Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| *In Re: Ambry Genetics Data Breach Litigation*<br><br>This Documents Relates To:<br>All Actions | Hon. Cormac J. Carney<br><br>Lead Case No.: 8:20-cv-00791 CJC (KESx)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE: March 6, 2023<br>TIME: 1:30 p.m.<br>CTRM: 9B |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND .....................................................................................2

    A.    The Data Breach and the Procedural History of this Action ................2

    B.    The Parties Conducted Extensive Discovery...............................................3

    C.    Settlement Negotiations and Mediation........................................................4

    D.    Preliminary Approval and the Fee Motion.................................................6

III.   THE TERMS OF THE SETTLEMENT ..............................................8

    A.    The Settlement Class and Release..........................................................8

    B.    Settlement Benefits ........................................................................8

        1.    Cash Payments to Settlement Class Members...............8

        2.    Credit Monitoring and Insurance Services ...................9

        3.    Ambry's Business Practice Changes ...........................10

        4.    The Total Settlement Value is in Excess of $20 million11

        5.    Attorneys' Fees and Costs and Service Awards ..........12

        a.    Attorneys' Fees and Costs ...........................................12

        b.    Class Representative's Service Awards.......................13

IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE...........14

    A.    Class Certification ...................................................................14

    B.    The Settlement Is Fundamentally Fair, Adequate, and
          Reasonable..........................................................................................14

        1.    The Strength of Plaintiffs' Case and the Risk, Expense,
              Complexity, and Likely Duration of Further Litigation15

        2.    The Settlement Is an Extraordinary Result .................17

        3.    The Extent of Discovery Completed, State of
              Proceedings, and Experience and View of Counsel Favor
              Approval...................................................................................17

        4.    Class Members' Overwhelmingly Positive Reaction ..18

- i -

5.    The Rule 23(e)(2) Factors Are Satisfied.....................19

a. Class Representatives and Class Counsel Adequately
Represented the Class..........................................19

b.    The Parties Negotiated the Settlement at Arm's-
Length ...................................................................20

c.    Adequacy of Relief for the Class.......................21

(i)    The Costs, Risks, and Delay of Trial and
Appeal......................................................21

(ii)    The Effectiveness of Proposed Method of
Distributing Relief to the Class ................21

(iii)    Attorneys' Fees and Costs, and Service
Awards.....................................................22

(iv)    Agreements Required Under Rule 23(e)(3)22

d.    Equitable Treatment of Class Members...........22

V.    CONCLUSION ..........................................................................23

# **TABLE OF AUTHORITIES**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d. 964 (E.D. Cal. 2012) ............... 15

*Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-
    CJC-FFM, 2021 WL 606245 (C.D. Cal. Jan. 25, 2021) ............................ 14

*Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) ......................................................... 16

*Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL
    6496734 (C.D. Cal. Dec. 9, 2021) ................................................... 15

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC,
    2019 WL 6972701 (D. Colo. Dec. 16, 2019) ...................................... 16

*Hashemi v. Bosley, Inc.*, No. 21-cv-00946-PSG (RAOX), 2022 WL
    2155117 (C.D. Cal. Feb. 22, 2022) ............................................ 15, 17

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ............. 16

*In re Anthem, Inc. Data Breach Litigation,* No. 15-md-02617-LHK, ECF
    No. 1007 (N.D. Cal. 2017) ........................................................... 19

*In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX-SRB (D.
    Ariz. Dec. 5, 2019), Dkt No. 170 .................................................... 5

*In re Banner Health Data Breach Litigation,* No. 16-cv-02696-SRB, ECF
    No. 195 (D. Ariz. 2019) ............................................................... 19

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ....................................... 22

*In Re Experian Data Breach Litig.,* No. 8:15-cv-01592 (C.D. Cal.), Dkt
    No. 286 ............................................................................. 5, 22

*In re Experian Data Breach Litigation,* No. 15-cv-01592AG, ECF No. 309
    (C.D. Cal. 2018) ...................................................................... 19

*In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) .......... 14

*In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) .......... 14

1   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..........................18

2   *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410

3        (3d Cir. 2016).............................................................................................13

4   *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-

5        MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019) ...................................5

6   *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807,

7        2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .........................................16

8   *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007)...........16

9   *In re Zoom Video comm., Inc. Privacy Litig.*, No. 3:20-cv-02155-LB, 2022

10       WL 1593389 (N.D. Cal. Apr. 21, 2022)........................................................5

11  *Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK, 2022 WL 17253907

12       (C.D. Cal. Nov. 15, 2022)...........................................................................20

13  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)......................17

14  *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI, 2022 WL

15       4791923 (E.D. Cal. Sep. 30, 2022)..............................................................20

16  *McDonald, et al., v Kiloo ApS et al.,* No. 3:17-cv-04344-JD (N.D. Cal.

17       Aug. 5, 2020), Dkt. 363 ...............................................................................5

18  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.

19       Cal. 2004) ...................................................................................................18

20  *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).................14

21  *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL

22       1044692 (M.D. Ala. Mar. 17, 2017)............................................................16

23  *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..............................14, 15

24  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)...........................14

25  **Statutes**

26  Federal Rule of Civil Procedure 23(e)...........................................................14, 19

27

28

## I.    INTRODUCTION

The Court preliminarily approved the proposed Settlement, and the Settlement Administrator has disseminated notice to Class Members in accordance with the Notice Plan.[1] Now, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and approve it as fair, reasonable, adequate, and in the best interest of the Class.

After more than two years of hard-fought litigation, including extensive motion practice, discovery, a full-day mediation before the Honorable Jay C. Gandhi (Ret.), and nearly six months of additional settlement discussions, the parties reached an exceptional Settlement that compensates Class Members for their losses and protects them against future risks caused by the Data Breach. Based on all claims processed to date, the Settlement is valued in excess of $20 million, and Plaintiffs expect this value to continue to rise until all claims are processed. As explained in detail below, this includes the $12.25 million non-reversionary Settlement Fund, the $1.4 million Ambry allocated in business practices changes resulting from this Action, and the value of the Settlement's robust Credit Monitoring and Identity Theft Insurance Services, based on current claim figures.

Through the Settlement, each Class Member is eligible to submit a claim for (i) a three-year subscription to comprehensive credit monitoring and identity theft protection; (ii) a cash payment of up to $300 for time spent addressing or remedying issues fairly traceable to the Data Breach; and (iii) reimbursement of up to $10,000 for documented losses and/or expenditures fairly traceable to the Data Breach. In addition, California and Illinois Subclass Members will automatically receive an additional cash payment of up to $150 for their claims under the California Confidentiality of Medical Information Act (the "CMIA"), Cal. Civ. Code §§ 56 *et*

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement. (ECF No. 144).

*seq*., and the Illinois Genetic Information Privacy Act (the "GIPA"), 410 Ill. Comp. Stat. 513 / 1–50, which provide for statutory damages.

The Court-approved Notice Plan provided for notice by U.S. mail, as well as the creation of a Settlement Website, a conspicuous posting of the Settlement to appear on Defendant Ambry Genetic Corp's ("Ambry") website during the Claims Period, and an industry-standard digital media notice campaign. (Declaration of Meagan Brunner ("Brunner Decl.") ¶¶ 6-9.) The Settlement Administrator believes well over 90% of the Class received at least one form of notice. (*Id.* ¶ 7.)

The reaction from Class Members has been overwhelmingly positive and strongly supports final approval. The exclusion and objection deadlines were January 9, 2023. The Settlement Administrator received 36 requests for exclusion and no objections to the Settlement. In contrast, 13,988 claims have been submitted via the claims process. (*Id.* ¶¶ 10, 13.)

In light of the valuable benefits conveyed to Class Members and the significant risks faced through continued litigation, the terms of the Settlement are fair, reasonable, and adequate, and merit final approval.

## II.    BACKGROUND

### A.    The Data Breach and the Procedural History of this Action

After Ambry announced the Data Breach, four related class actions were filed in federal court. Plaintiffs' counsel in these four cases self-organized, ultimately proposing that the Court consolidate the cases and appoint Interim Class Counsel in accordance with Rule 23(g). (Dkt. 29, 33.) The Court granted these requests, consolidating the cases (Dkt. 30) and appointing lead counsel (Dkt. 37).

On September 21, 2020, Plaintiffs filed a Consolidated Class Action Complaint (Dkt. 39), alleging Ambry breached its duties to Plaintiffs by failing to maintain reasonable and adequate security measures to protect its patients' personal and health information from unauthorized access and disclosure. Plaintiffs subsequently filed a First Amended Complaint ("FAC") on December 9, 2020 (Dkt.

57), naming both Ambry and Realm IDx, Inc. ("Realm") (f/k/a Konica Minolta Precision Medicine, Inc. ("KMPM")) as defendants.

On April 7, 2021, Defendants moved to dismiss the FAC, which the Court granted without prejudice. Plaintiffs filed a redacted Second Amended Complaint ("SAC") on April 21, 2021, and Defendants moved to dismiss and strike the SAC on May 29, 2021, which Plaintiffs opposed. (Dkt. 75-76.) On July 30, 2021, the Court denied both motions without prejudice. (Dkt. 92.) Plaintiffs also brought a motion to permit Plaintiffs to provide the Court with the unredacted SAC under seal. (Dkt. 84.)

Defendants subsequently moved to dismiss the SAC a second time, which the Court granted in part and denied in part on October 18, 2021. (Dkt. 109 at 26.) That same day, the Court issued an order requiring Plaintiffs to file the unredacted SAC, which Plaintiffs filed on October 25, 2021. (Dkt. 110, 112.)

On November 1, 2021, after the parties filed a stipulation substituting Realm for KMPM, Plaintiffs filed a Third Amended Complaint ("TAC"), which removed the causes of action dismissed by the Court and revised the UCL and CLRA causes of action in accordance with the Court's MTD Order. After the parties met and conferred regarding Defendants' motion to dismiss the TAC, the parties entered a stipulation to allow Plaintiffs to file the presently operative Fourth Amended Complaint ("4AC"), which Plaintiffs filed on December 13, 2021. (Dkt. 126.)

Ambry moved to dismiss the 4AC on January 10, 2022, which Plaintiffs opposed on January 24, 2022. (Dkts. 128-30.) That motion remained pending when the parties negotiated the Settlement, as discussed further below.

**B.    The Parties Conducted Extensive Discovery**

Following the appointment of Class Counsel, Plaintiffs served Freedom of Information Act requests and similar requests under the public record acts of 20 states, obtaining many substantive responses including copies of Ambry's disclosures to these governmental regulators. (*See* Joint Declaration of Class

Counsel in Support of Motion for Final Approval ("Joint Decl.") ¶ 30.) The parties exchanged initial disclosures in October and December 2020. (*Id.*)

Plaintiffs also propounded extensive written discovery upon Defendants, including two sets of detailed requests for production of documents. The parties negotiated search terms for production of documents for both offensive and defensive discovery. Ambry produced approximately 27,000 pages of documents in electronic format, which included two reports produced by two different forensic investigators that Ambry retained to investigate and aid its response to the Data Breach. (*Id.* ¶ 28.) Plaintiffs issued subpoenas to these two investigators, as well as to Kroll, which assisted with Ambry's notifications to Class Members concerning the Data Breach. (*Id.* ¶ 28.) Plaintiffs were also prepared to move the Court for an order compelling Ambry to produce a forensic image of the employee's laptop whose email account was accessed during the Data Breach. (*Id.* ¶ 29.) Plaintiffs also issued and received confirmatory discovery, and retained and consulted with a knowledgeable cybersecurity expert concerning the Data Breach and the related forensic reports produced by Ambry. (*Id.* ¶ 29.)

Ambry propounded extensive discovery on Plaintiffs. For instance, Defendants each propounded their own set of interrogatories and requests for production on each Plaintiff, which ultimately required 95 separate, unique, written responses from each Plaintiff. (*Id.* ¶ 30.) Plaintiffs also utilized search terms across their custodial files for production of documents. (*Id.* ¶ 28.)

As a result of this extensive discovery and expert consultation, Plaintiffs had a thorough understanding of the Settlement Class, the nature of Ambry's anticipated defenses, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues implicated. (*Id.* ¶ 31-33.)

**C.    Settlement Negotiations and Mediation**

The Parties engaged in extensive, arms-length negotiations over the course of

many months, including a full-day mediation session before Judge Gandhi. (*Id.* ¶ 32.) Judge Gandhi has extensive experience in class action litigation, both from his time as a Magistrate Judge in the Central District of California and through mediating many class actions, including multiple data privacy cases.[2]

Prior to mediation, the parties prepared comprehensive mediation briefs and commenced mediation with Judge Gandhi on January 26, 2022. (*Id.* ¶ 33-34.) Although progress was made, the case did not settle at that time, and the parties continued negotiations. (*Id.*) The parties reported the status of their negotiations to the Court on January 31, 2022, and the Court granted their request to stay the case, including the then-pending motion to dismiss the 4AC, to allow those negotiations to continue. (Dkt. 131-32.)

On March 1, 2022, the parties reached an understanding in principle regarding certain terms, and reported this to the Court on March 10, 2022. (Dkt. 134.) On March 11, 2022, the Court granted the parties' request to extend the stay to allow the parties to enter into a more formal agreement. (Dkt. 135.) On July 8, 2022, the parties reported to the Court that a settlement in principle had been reached. (Dkt. 136.) In response, the Court extended the stay (Dkt. 138) and vacated the hearing on Ambry's motion to dismiss the 4AC. (Dkt. 139.) On August 29, 2022, the parties further reported to the Court via a joint status report that, on July 25, 2022, the parties formally entered into the Settlement Agreement. (Dkt. 140.)

During these negotiations, the parties collaborated on the logistics and substance of the notice plan. (Joint Decl. ¶ 42.) Class Counsel spent numerous hours

---

[2]  *See, e.g.*, *In re Zoom Video comm., Inc. Privacy Litig.*, No. 3:20-cv-02155-LB, 2022 WL 1593389, at *2 (N.D. Cal. Apr. 21, 2022), *In Re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.), Dkt No. 286-1 at 7; *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019), Dkt No. 170, at 6; *McDonald, et al., v Kiloo ApS et al.,* No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. 363, at 2-3, 13; *see also* https://www.jamsadr.com/gandhi/ (last visited Feb. 2, 2023).

PLAINTIFFS' MOTION FOR FINAL APPROVAL

obtaining and negotiating bids from three well-established, experienced, and highly regarded class action administration firms. (*Id.* ¶ 42-44.) As a result, Plaintiffs maximized the amount that would be available for payment of claims, by minimizing notice and administration costs, while ensuring that the notice and administration plan complied with all rules, guidelines, and due process requirements. (*Id.*)

### D.    Preliminary Approval and the Fee Motion

On September 9, 2022, Class Counsel moved for preliminary approval of the Settlement (Dkt. 143), which the Court granted on October 5, 2022. (Dkt. 145.)

With respect to fees, the Court ordered Plaintiffs and Class Counsel "to provide a fuller explanation of why the Settlement should be valued at $20 million, why the clear sailing agreement does not raise collusion concerns in this case (with reference to recent cases in which courts have approved settlements with clear sailing provisions), data sufficient to perform a lodestar cross-check, and any other provision or fact bearing on the propriety of the negotiations." (Dkt. 145 at 22-23.) The Court scrutinized the timing of the payment of the attorneys' fees and costs under the Settlement, observing that the Settlement Administrator must pay Class Counsel no later than five business days after the Effective Date, whereas California and Illinois Subclass Members will be paid within 90 days of the Effective Date, then have 90 days to cash or deposit their check, and then 30 days after that, the remaining Class Members will be paid. (Dkt. 145 at 23.) The Court also ordered Plaintiffs to describe why the Service Awards would be appropriate, and explain the work each named Plaintiff performed and why the Class benefitted from their actions. (Dkt. 145 at 24-25.)

On December 19, 2022, Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs, and Service Awards ("Fee Motion"). (Dkt. 155.) In the Fee Motion, Plaintiffs explained that the value of the Settlement already exceeded $18.6 million, based on the $12.25 million Settlement Fund, the additional value of $4,978,310.48

of the Credit Monitoring and Insurance Services (based on the 7,582 Participating Class Members that had elected to receive that benefit as of December 16, 2022), and the $1.4 million Ambry allocated in business practice changes because of this case. (*Id.* at 10-15.) Plaintiff also explained the clear sailing agreement does not raise collusion concerns in this case because 1) the case was heavily litigated; 2) the mediation and settlement negotiations were facilitated and overseen by Judge Gandhi—a well-respected mediator and retired magistrate judge; 3) the Settlement is non-reversionary; and 4) the Settlement is not conditioned in any way on Plaintiffs' prevailing on any award of attorneys' fees. (*Id.* at 23-25.) Plaintiffs further provided the Court with data sufficient to perform a lodestar cross-check, identifying the 3,455.6 hours and a conservatively calculated collective lodestar of $2,519,530.10, which represents a multiplier of 1.94 that is fair and reasonable in light of the significant risks Counsel faced, the complexity of the issues presented, and the excellent results achieved. (*Id.* at 15-22.)

With respect to the Court's concern regarding the timing of the payments, Class Counsel confirmed with the Settlement Administrator that it will endeavor to issue initial payments to the California and Illinois Subclass Members within 30 days of the Effective Date (*Id.* at 25.) Class Counsel will also refrain from receiving payment of any court-approved attorneys' fees and costs until the Settlement Administrator begins disseminating payments to California and Illinois Subclass Members, which is consistent with the recommendation of the Hon. Thierry Patrick Colaw (Ret.), whom Class Counsel retained to perform a review and evaluation of the timesheets and expense reports and identify potential issues with respect to the requested attorneys' fees and costs. (*Id.*)

Along with the Fee Motion, each Class Representative submitted a declaration detailing their efforts throughout the litigation, and Plaintiffs explained the benefit of having so many Class Representatives from different states, which strengthened the likelihood of obtaining class certification by seeking to certify

subclasses under 15 different states, if the Court had rejected a single nationwide class. (*Id.* at 28-29.)

## III.   THE TERMS OF THE SETTLEMENT

### A.   The Settlement Class and Release

The proposed Settlement Class is defined as:

> [T]he approximately 225,370 patients who are identified on the Settlement Class List, including Plaintiffs, whose PHI and PII was allegedly contained in an employee's compromised email account in the Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

In exchange for the Settlement's benefits, all Settlement Class Members will release any claims against Defendants based on one or more of the same factual predicates alleged in the Action. (*Id.* ¶ 43.)

### B.   Settlement Benefits

The Settlement provides for a non-reversionary cash fund of $12.25 million, which will be used to pay (i) Administrative Expenses; (ii) any Taxes; (iii) any Service Awards approved by the Court; (iv) any Fee Award and Costs to Class Counsel approved by the Court; (v) the cost of the Credit Monitoring and Identity Theft Insurance Services; (vi) Subclass Payments to California and Illinois Subclass Members; and (vii) any Out-of-Pocket Costs Payments, Documented Time Payments, and Default Time Payments. (SA ¶¶ 55, 70-73.)

### 1.  Cash Payments to Settlement Class Members

All Participating Settlement Class Members are eligible to receive a cash payment of up to $10,000 for reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach, and a cash payment for time spent addressing or

remedying issues that are fairly traceable to the Data Breach, in the amount of $30 per hour for up to ten hours of Documented Time or $30 per hour for up to three hours of Default Time. (SA ¶¶ 80(a)-(d).) In addition, California or Illinois Subclass Members will *automatically* receive an additional cash payment of up to $150, in light of their respective claims under the CMIA and the GIPA, which provide for statutory damages.  (SA ¶ 80(e).)

Participating Settlement Class Members will have the option of receiving Settlement Payments via electronic means made available by the Settlement Administrator. In the event Participating Settlement Class Members do not exercise this option, they will receive their Settlement Payment via physical check sent by U.S. Mail. (SA ¶ 81.)

Settlement Payments will be reduced on a pro rata basis, if necessary. (*Id*. ¶ 87.) If sufficient funds remain after the above-described payments, then a second distribution will be made to Participating Settlement Class Members with Approved Claims who cashed or deposited their Settlement Payment, provided that the average payment amount is at least $5.00. Any Residual Funds remaining after this process will be used to extend the Credit Monitoring and Identity Theft Insurance Services to Participating Settlement Class Members receiving that benefit for as long as possible. (*Id*. ¶ 89.) Any remaining funds shall then be distributed to the Non-Profit Residual Recipient, the Electronic Frontier Foundation, a 26 U.S.C. 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members, as described in more detail in the Declaration of Cindy Cohn in Support of Motion for Preliminary Approval of Class Action Settlement (Dkt. 143-4).

## 2. Credit Monitoring and Insurance Services

Each Participating Settlement Class Member who submits a valid claim can receive three years of credit monitoring and identity theft protection through the Identity Defense Total+ plan. The Credit Monitoring and Insurance Services are

demonstrably better than many competing products and will help prevent and mitigate against future identity theft. (Declaration of Jerry Thompson (Dkt. 143-3) ("Thompson Decl.") ¶¶ 7-9; Declaration of Robert Siciliano (Dkt. 143-2) ("Siciliano Decl.") ¶¶ 4-5.) To the extent a Participating Settlement Class Member electing to receive this benefit is already enrolled in the Identity Defense Total+, their current plan will automatically be extended by three years. (Thompson Decl. ¶ 10.) The Identity Defense Total+ product is tailored to the needs of the Class Members and valued at $19.99 per month. (Thompson Decl. ¶ 7; Siciliano Decl. ¶ 4.) Accordingly, the value of this benefit to the Settlement Class is at least $1,621,852.67 for every 1% of Class Members that elect to receive this benefit, before excluding the cost of that benefit.[3] (*Id.* ¶ 7; Dkt. 143-2, Siciliano Decl. ¶ 6.)

### 3. Ambry's Business Practice Changes

Ambry acknowledged it allocated $1.4 million on business practice changes because of this litigation and Settlement. (Joint Decl. ¶¶ 10, 13-14, 49, Ex. 4 at 65:19-67:4 [filed under seal].) Although Plaintiffs explained in the Fee Motion why these measures should be considered when determining the Total Settlement Value (Dkt. 155. at 14-15), Plaintiffs have not been provided permission from Ambry to provide those exact measures on the public record, beyond those that have been identified in the Settlement Agreement (SA ¶ 92), given concerns Ambry has that this information could be utilized by unauthorized parties.  Plaintiffs will file the portion of the deposition discussing the business practice changes under seal for the Court's review, which demonstrate that Ambry allocated $1.4 million in business practice changes, and that this litigation and Settlement were a substantial factor of Ambry's decision to allocate those resources and implement those remedial steps.

---

[3] 225,370 Settlement Class Members × 1% = 2,253.7; 2,253.7 × 36 months × $19.99 = $1,621,852.67. The cost of the Credit Monitoring and Insurance Services will be paid out of the Settlement Fund, and under no circumstances will those costs exceed $478,000.00, unless Plaintiffs use any residual funds to purchase additional months of Credit Monitoring and Insurance Services. (Joint Decl. ¶ 83.)

(Joint Decl. ¶¶ 10, 13-14, 49, Ex. 4 at 65:19-67:4 [filed under seal]).

### 4.  The Total Settlement Value is in Excess of $20 million

The Total Settlement Value, which consists of the $12.25 million non-reversionary Settlement Fund, the value of Credit Monitoring and Insurance Services, and the amount allocated for Ambry's business practice changes, is in excess of $20 million.  The $12.25 million Settlement Fund will be used to provide the benefits set forth above, as well as a robust class notice, settlement administration, and any court-approved Service Awards and Fee Award and Costs.

The Settlement Fund alone comes to a $54.36-per-individual value based on the approximately 225,370 Settlement Class Members identified on the Settlement Class List, an incredible result compared to other recent data breach settlements (*see, e.g.*, *In Re: 21st Century Oncology Customer Data Security Breach Litigation*, No. 8:16-md-2737-MSS-AEP (M.D. Fl. 2021) ($3.64); *In Re: Banner Health Data Breach Litigation*, No. 2:16-cv02696-PHX-SRB (D. Ariz. 2020) ($3.07); *Adlouni v. UCLA Health Systems Auxiliary, et al.* No. BC589243 (Cal. Super. Ct. 2019) ($1.67); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG (C.D. Cal. 2019) ($1.47); *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617-LHK (N.D. Cal. 2017) ($1.39); *Michael Corona, et al v. Sony Pictures Entertainment, Inc.*, No. 14-cv-09600 RGK (C.D. Cal. 2016) ($10.34), but does not factor in the actual Settlement value here, which includes the value of the Credit Monitoring and Insurance Services and business practice changes.

The Claims Deadline is February 7, 2023, and Plaintiffs will present final figures before the Final Approval Hearing. However, as of February 2, 2023, 9,883 approved claims for Credit Monitoring and Insurances Services have been received, meaning that benefit provides an additional value of $6,634,202.12 to the Settlement

(which subtracts the cost of providing such services).[4] When including this with the $12.25 million Settlement Fund and the $1.4 million allocated in business practice changes, the Total Settlement Value is presently $20,284,202.12.

### 5. Attorneys' Fees and Costs and Service Awards

On December 19, 2022, Plaintiffs filed their Fee Motion (Dkt. 155), through which they seek an award of attorneys' fees and costs in the amount of $4.9 million ($4,875,644.90 in fees and $24,355.10 in costs), and $2,500 in Service Awards to each of the 25 Class Representatives. The requested awards are supported by the results achieved, the risk of continued litigation, the Settlement value, the quality of Counsel's representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and the time and expenses incurred by Plaintiffs' Counsel. (*Id.*) The Notice informed Class Members that Class Counsel would seek such an award of attorneys' fees and costs and service awards for the Class Representatives, and the Fee Motion was posted on the Settlement Website. Importantly, no objections to any of the requested awards have been received. (Brunner Decl. ¶ 14.)

### a. Attorneys' Fees and Costs

Plaintiffs' Counsel devoted more than 3,455.6 hours and incurred a conservatively calculated, collective lodestar of $2,519,530.10 to secure the relief for the Class (these numbers do not include any time spent preparing the Fee Motion or the present motion). Before filing the Fee Motion, Class Counsel collectively reviewed all of the time submissions, audited them, and reduced hours that appeared duplicative, excessive or unnecessary. (Dkt. 155-1 ¶ 79-86.) Class Counsel also retained Judge Colaw (Ret.) to perform an evaluation of the timesheets and expense

---

[4] 9,883 Credit Monitoring and Insurance Services claims as of February 2, 2023 × 36 months × $19.99 value per month = $7,112,202.12-$478,000 (Credit Monitoring and Insurances Services cost) = $6,634,202.12 (actual value of Credit Monitoring and Insurance Services based on February 2, 2023 figures).

reports and identify potential issues with respect to the attorneys' fees and costs they seek. (Dkt. 155-2, ¶ 1.) Based on Judge Colaw's recommendations and Class Counsel's adherence to the billing protocol, Class Counsel reduced the number of hours from 3,954.5 to 3,455.6 and the lodestar for all firms from $2,912,674.20 to $2,519,530.10, or a total reduction of $393,144.10 or 13.5%. This results in a lodestar multiplier of 1.94, which is fair and reasonable in light of the significant risks Counsel faced, the complexity of the issues presented, and the excellent result achieved. (Dkt. 155 at 19-22.)

At the time the Fee Motion was filed, the $4.9 million in attorneys' fees and costs amounted to 26.3% of the Settlement Value. Since then, an additional 2,301 claims for Credit Monitoring and Insurance Services Benefit have been processed, increasing the Total Settlement Value from $18,628,310.48 to $20,284,202.12. Therefore, the $4.9 million sought in attorneys' fees and costs now amounts to only 24.2% of the current Settlement Value, and the final percentage will be provided before the Final Fairness Hearing.

All substantive elements of the Settlement were negotiated before the attorneys' fees, costs, and service awards. (Joint Decl. ¶ 41.) This practice is routinely approved by courts. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016), as amended (May 2, 2016). The attorneys' fees and costs requested are within the Ninth Circuit's 25% benchmark under the percentage-of-the-fund method, and courts exceed the benchmark when justified, considering factors much like those considered when determining whether a multiplier is appropriate under the lodestar approach. *Vizcaino*, 290 F.3d at 1048, 1051.

### b. Class Representative's Service Awards

Subject to Court approval, Ambry agrees not to oppose the payment of $2,500 service awards to each of the 25 Class Representatives for their service as Class Representatives. (SA ¶ 111.) Plaintiffs have moved for service awards in that

amount and, as set forth in the Class Representatives' and Class Counsel's declarations, these Service Awards are warranted. (Dkt. 155 at 28-29.)

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and service award requested. *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245, at *1 (C.D. Cal. Jan. 25, 2021). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

### A.    Class Certification

In its Preliminary Approval Order, the Court certified the Class for settlement purposes. (Dkt. 145.)  Nothing has changed since the Court's ruling at that time to call the Court's conclusions regarding class certification into question. (Joint Decl. ¶ 65.) Accordingly, Plaintiffs ask that the Court finally certify the Settlement Class for settlement purposes.

### B.    The Settlement Is Fundamentally Fair, Adequate, and Reasonable

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits.").

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e), and requires court approval. Courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks

omitted). In considering whether this standard is met, courts consider various factors, including (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, and (7) the reaction of the class members to the proposed settlement. *Id.*

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The strength of Plaintiffs' case, when balanced against the risks and obstacles of continued litigation, weighs in favor of final approval. In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d. 964, 975 (E.D. Cal. 2012). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Id.* at 976.

While Plaintiffs are confident that they would succeed if this case proceeded to trial, this would entail substantial time, expense, and risk. (Joint Decl. ¶ 80.) Although all class actions involve a high level of risk, expense, and complexity, data breach litigation is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. 21-cv-00946-PSG (RAOX), 2022 WL 2155117, at \*7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at \*3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at

*1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

One risk is that Ambry might successfully oppose class certification. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), and *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017) (granting certification); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data-breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky.").

Further, case law specific to data breach litigation is evolving, and there is no guarantee of the ultimate result. *See In re Anthem*, 327 F.R.D. at 318 ("Due to the unsettled nature of the legal questions, [p]laintiffs would likely have to contend with changing interpretations of procedural and substantive provisions throughout the course of the case."); *Gordon*, 2019 WL 6972701, at *1 ("Serious questions of law and fact regarding the merits of [p]laintiffs' claims and [d]efendant's defenses place the ultimate outcome of the litigation in doubt."); *In re Sonic Corp.*, 2019 WL 3773737, at *7 ("This unsettled area of law often presents novel questions for courts.").

Plaintiffs also would have to overcome Ambry's motion for summary judgment, which likely would present issues of standing, causation, and damages. While Plaintiffs believe they would prevail on these issues, continued litigation would entail the risk of Plaintiffs losing some or all of their remaining claims before trial and, even if successful at trial, would have to prevail in any subsequent appeals. Given the substantial risk and high costs, including expert costs, in maintaining the

lawsuit through class certification, summary judgment, and trial, this factor weighs in favor of approving the Settlement. (*See* Joint Decl. ¶ 80.)

## 2.  The Settlement Is an Extraordinary Result

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes*." Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). The amount Plaintiffs have recovered through this Settlement is an excellent result for the Class.

As the Court acknowledged in its Preliminary Approval Order, "other courts have approved settlements in privacy and security cases with far less recovery per person." (Dkt. 16-17, *citing In re Yahoo!*, 2020 WL 4212811, at *10 (approving a Settlement Fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Hashemi*, 2022 WL 2155117, at *7 (approving data breach settlement, finding that the estimated $15 to $275 per class member value "greatly exceed[ed] the settlement value per class member in comparable data breach cases," and collecting cases with estimated settlement values of less than $1 per class member).) These data breach settlements highlight the tremendous benefits Plaintiffs achieved for the Settlement Class.

## 3.  The Extent of Discovery Completed, State of Proceedings, and Experience and View of Counsel Favor Approval

As the Court acknowledged in its Preliminary Approval Order, this "[l]itigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions given that Defendants had filed seven motions to dismiss or strike Plaintiffs' claims and the Court ruled on four of those—at one point granting Defendants' motion to dismiss in its entirety." (Dkt. 145 at 17.)  "With all that information, the parties were able to realistically value the scope of Defendants' potential liability and assess the costs, risks, and delay of moving forward with class certification, motion practice, and trial." (*Id.*, citing *In re Mego Fin. Corp. Sec.*

- 17 -

*Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).)

Given the advanced stage of these proceedings, Class Counsel have a clear view of the strengths and weaknesses of the case and recommend the Court grant final approval to the Settlement. (Joint Decl. ¶ 39.) This factor supports final approval. *See In re Mego*, 213 F.3d at 459 (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

### 4. Class Members' Overwhelmingly Positive Reaction

The January 9, 2023 Objection Deadline and Opt-Out Period have passed, and the Settlement Administrator received only 36 requests for exclusion and no objections, demonstrating the overwhelming positive reaction of the Settlement Class to this Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). In addition, the Claims Deadline is February 7, 2023. As of February 2, 2023, a total of 13,988 claims have been received. (Brunner Decl. ¶ 10.) This amounts to a claims rate of 6.13%.

Each California and Illinois Subclass Member on the Settlement Class List will automatically be mailed a Subclass Payment of approximately $149.97, based on these current figures.[5] In addition, by cashing a Subclass Payment, the California or Illinois Subclass Members will automatically be sent a Default Time Payment, regardless of whether they submitted a Claim Form. Because 29,663 California and

---

[5] The Subclass Payment amount has been reduced from $150 to $149.97 because 8 Participating Settlement Class Members provided Reasonable Documentation demonstrating they are a member of either the California Subclass or Illinois Subclass.

Illinois Subclass Members have not submitted a claim form, the total claims rate is likely to increase as those Class Members deposit their Subclass Payments.

Even without counting these additional California and Illinois Subclass Members, the claims rates is better than those in similar data breach settlements, including *Banner Health,* No. 16-cv-02696-SRB, ECF No. 195 at 1 (D. Ariz. 2019), in which the claims rate was at least approximately 1.3%; *Experian,* No. 15-cv-01592AG, ECF No. 309 at 17 (C.D. Cal. 2018), in which the claims rate was approximately 2.91%; *Anthem,* No. 5:15-md-02617-LHK, ECF No. 1007 at 4 (N.D. Cal. 2017), in which the claims rate was approximately 1.7%.

A supplemental declaration detailing the final claims rate will be filed before the March 6, 2023 Final Fairness Hearing. Regardless of those final numbers, this factor already weighs in favor of final approval.

### 5. The Rule 23(e)(2) Factors Are Satisfied

The Court also must find the settlement "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

#### a. Class Representatives and Class Counsel Adequately Represented the Class

The Class Representatives and Class Counsel vigorously and adequately represented the Settlement Class, filing four Consolidated Complaints, defending against seven motions to dismiss or strike, and working tirelessly to gather the documents and information necessary to properly evaluate the case, prepare for

class certification and trial, and negotiate a robust Settlement. As the Court recognized, "the Court had dismissed all of Plaintiffs' claims as insufficiently pled, but counsel still succeeded in alleging sufficient facts to withstand multiple subsequent motions to dismiss." (Dkt. 145 at 14-15.) Given the adequacy of representation and no conflict of interest exists, there is no reason to depart from the Court's preliminary approval finding.

### b. The Parties Negotiated the Settlement at Arm's-Length

The Settlement is the product of a highly contested litigation, involving extensive motion practice on the pleadings, substantial discovery, a full-day mediation before Judge Gandhi, and nearly six months of additional settlement negotiations. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness").

Although the Court stated it would closely examine the clear sailing agreement and the proportionality between the class's recovery and the attorneys' fees requested, Plaintiffs explained in the Fee Motion why the clear-sailing agreement does suggest collusion. (Dkt. 155 at 23-25, citing *Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK, 2022 WL 17253907, *12 (C.D. Cal. Nov. 15, 2022) (granting preliminary approval and finding no collusion despite clear-sailing agreement where non-reversionary settlement reached under supervision of mediator); *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI, 2022 WL 4791923, *9 (E.D. Cal. Sep. 30, 2022) (finding no collusion based on same). In addition, as discussed above, the requested attorneys' fees is within the Ninth Circuit's 25% benchmark for common fund cases, and represents a lodestar multiple of 1.94, which is fair and reasonable in light of the significant risks Counsel faced, the complexity of the issues presented, and the excellent results achieved.

Plaintiffs addressed the Court's concerns, and there is no reason to depart from the Court's preliminary approval finding.

### c.  Adequacy of Relief for the Class

As set forth above, the relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay that further motion practice, trial, and associated appeals would entail. The monetary value of the Settlement already exceeds $20 million, including the $12.25 million non-reversionary Settlement Fund, $1.4 million allocated in business practice changes, and the $6,634,202.12 in value that the Credit Monitoring and Insurance Services provide to Class Members.

### (i)  The Costs, Risks, and Delay of Trial and Appeal

As the Court acknowledged in its Preliminary Approval Order, "[t]he benefits class members will receive present a fair compromise given the costs, risks, and delay of trial and appeal." (Dkt. 145 at 17.)  Nothing should cause the Court to depart from its well-reasoned analysis on this point. (*Id.* at 16-18.)

### (ii) The Effectiveness of Proposed Method of Distributing Relief to the Class

As the Court found in its Preliminary Approval Order, the manner in which relief is distributed is straightforward and not unduly demanding. (*Id.* at 19.) Class Members can simply fill out the Claim Form mailed to them to receive Credit Monitoring and Identify Theft Insurance Services and a payment for Default Time, or they may submit a Claim Form on the Settlement Website to receive those benefits and/or reimbursement for Out-of-Pocket Costs and a Documented Time Payment, if they submit Reasonable Documentation. All California and Illinois Subclass Members will automatically be mailed a Subclass Payment, and depositing the payment will automatically entitle the recipient to a Default Time payment. In addition, the successful claims rate and lack of objections demonstrate the Settlement provides an effective method of distributing relief to the Settlement Class. There is no reason for the Court to depart from its prior findings.

///

### (iii)    Attorneys' Fees and Costs, and Service Awards

For the reasons discussed in Plaintiffs' Fee Motion, the Court should approve Service Awards of $2,500 to each Class Representative and an award of attorneys' fees and litigation costs in an amount of $4.9 million.  Plaintiffs have explained why the Total Settlement Value includes the value of the Credit Monitoring and Insurances Services and the amount allocated for Ambry's business practice changes. (Dkt. 155 at 10-14.) Plaintiffs identified other courts, including in this District, that have utilized such an approach. (*Id.* at 12-13, citing *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *38 (N.D. Ga. Mar. 17, 2020), aff'd as to attorneys' fees, 999 F.3d 1247 (11th Cir. 2021); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592-AG-DFM, Dkt. 322 at 8-10 (C.D. Cal. May 10, 2019). Finally, Class Counsel has obtained the Settlement Administrator's commitment to begin processing payments within 30 days of final approval and to refrain from paying any Court approved attorneys' fees and costs and Class Representative Service Awards until those payments begin. (Dkt. 155 at 25.)

While Plaintiffs believe they have addressed all of the Court's concerns, the Settlement is in no way contingent on the Court's acceptance of requested fees, costs, or service awards. As such, the Court should finally approve the Settlement regardless of its decision concerning the appropriate awards in this case.

### (iv)    Agreements Required Under Rule 23(e)(3)

Class Counsel is unaware of any agreement that must be disclosed pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv).

### d. Equitable Treatment of Class Members

The Settlement treats Class Members equitably relative to each other and their claims. All Class Members are eligible for three years of credit monitoring and up to $90 for Default Time, regardless of whether they submit documentation with their Claim Form. Class Members with documented harm may recover up to $10,000 for

their Out-of-Pocket Costs, and Class Members with documented time spent related to the Data Breach may recover up to $300 for their Documented Time, instead of the $90 for Default Time. In addition, California and Illinois Subclass Members may recover additional funds based on their claims under the CMIA and the GIPA, which provide for statutory damages. Any Settlement Class Member may provide documentation demonstrating they were a California or Illinois citizen or resident during the Settlement Class Period, entitling them to a Subclass Payment. Nothing should cause the Court to depart from its finding that the distinction is reasonable and the Settlement treats Class Members equitably.  (Dkt. 145 at 24.)

## V.    CONCLUSION

The proposed Settlement is fair, reasonable, and adequate, and warrants final approval. Accordingly, Plaintiffs request that the Court grant this motion, finally approve the Settlement, and enter a final judgment and order.

Dated: February 6, 2023          */s/ Daniel S. Robinson*
                                 Daniel S. Robinson (SBN 244245)
                                 Michael W. Olson (SBN 312857)
                                 **ROBINSON CALCAGNIE, INC.**
                                 19 Corporate Plaza Drive
                                 Newport Beach, CA 92660
                                 (949) 720-1288; Fax (949) 720-1292
                                 drobinson@robinsonfirm.com
                                 molson@robinsonfirm.com

                                 Tina Wolfson (SBN 174806)
                                 Theodore W. Maya (SBN 223242)
                                 **AHDOOT & WOLFSON, PC**
                                 2600 West Olive Ave., Suite 500
                                 Burbank, CA 91505
                                 (310) 474.9111; Fax 310.474.8585
                                 twolfson@ahdootwolfson.com
                                 tmaya@ahdootwolfson.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jean S. Martin (Admitted *Pro Hac Vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908; Fax (813) 222-4795
jeanmartin@ForThePeople.com

*Plaintiffs' Co-Lead Counsel*

Gary E. Mason
**MASON LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
(202) 640-1160
gmason@masonllp.com

Melissa R. Emert
**KANTROWITZ GOLDHAMER &**
**GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
(845) 356-2570; Fax (845) 356-4335
ggraifman@kgglaw.com

*Attorneys for Plaintiffs and the*
*Proposed Class*

PLAINTIFFS' MOTION FOR FINAL APPROVAL

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: February 6, 2023

*/s/ Daniel S. Robinson*
Daniel S. Robinson